# Richmond

## James Daniel Poindexter v. Commonwealth of Virginia.

September 1, 1972.

Record No. 7924.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*William S. Mundy, III,* for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Defendant, James Daniel Poindexter, appeals his conviction by a jury of rape and the final judgment of the trial court sentencing him to confinement in the State Penitentiary for a period of 20 years. We consider the principal questions presented by defendant's 12 assignments of error.

It is unnecessary that we relate the testimony of the various witnesses in detail. It suffices to say that Joan Gayle Copeland testified that about 10:30 A. M. on the morning of March 4, 1971 she was raped by Poindexter. She testified that she admitted defendant into the house in which she had an apartment as the result of a telephone call from him that he desired to obtain some television tubes which were in the apartment occupied by her landlady. Shortly after defendant entered she said that he grabbed her around the neck and threatened to kill her. She said he held a knife first to her back and then her throat and forcibly had intercourse with her. The victim said that she tried to push defendant away, and fought him as hard as she could. Defendant remained with his victim for about an hour. When he left she stated that he told her he would be back later that night, and if she told anybody about what had happened he would kill her.

After defendant left Mrs. Copeland went to the home of her mother-in-law where she told her sister-in-law that a man had tried to kill her, but did not mention the rape. She endeavored to reach her husband who was at work. Immediately after Mr. Copeland was advised that his wife was trying to reach him he went to his mother's home. There he said he found his wife in a highly nervous condition and barely able to talk. She told him what had occurred and he called the police. The following day Mrs. Copeland consulted a physician who observed her swollen neck glands and muscles, and noted a 15% limitation of motion in her neck. She testified that her injuries were caused by the choking she received from defendant. The physician stated that the injuries were such as could have resulted from someone putting his hands around her neck.

Defendant admitted that he had intercourse with Mrs. Copeland on the morning of March 4, 1971, but stated that the act was with her consent and in fact encouraged by her. He also testified to having had intercourse with her on four or five previous occasions. The defense introduced evidence to the effect that defendant and Mrs. Copeland had been in each other's presence several times in the apartment of the Copelands' landlady, and that defendant had also been in the Copeland apartment previously. Mrs. Copeland testified that on one occasion defendant had tried to kiss her, and that she told her husband. She denied any intercourse or familiarity with defendant prior to the alleged rape.

Several neighbors and relatives of defendant testified to having seen defendant leave the victim's house on March 4th and said she shut the door behind him. There was some testimony that the victim had been in the company of another man while her husband was away. Mrs. Copeland identified the other man as her boss who sometimes brought her home from work in his station wagon.

We have here a clear conflict in the evidence. The prosecutrix testified that the act of intercourse was accomplished with force and against her will, and was accompanied with a threat to kill her. Defendant testified that the prosecutrix consented to the intercourse. The conflicting evidence created a jury issue, and that body chose to believe the prosecutrix and found that defendant's guilt had been established beyond a reasonable doubt. This verdict has the approval of the trial judge. Notwithstanding we may have reached a different conclusion, this court will not set aside the verdict of a jury unless it appears that such is plainly wrong or without evidence to support it. We cannot say that the evidence of the prosecutrix is "inherently incredible" or so contrary to human experience or to usual human behavior as to render it unworthy of belief. We cannot say that the verdict of the jury is without evidence to support it.

Defendant questions the propriety of a statement made to the jury by the trial judge. Following final arguments of counsel the jury retired to consider its verdict. After some time it returned to the courtroom and advised the court that it could not "come together as a body agreeable to any terms". Because of the lateness of the hour the trial judge adjourned court until the next morning and requested the jury to come back at that time and deliberate further. On the following morning the jury returned and the court instructed it as follows:

"I want to tell you that if you can possibly reach a verdict you should do so. I don't want any of you who have a conscientious opinion to surrender that opinion. However, you should listen with fairness and candor to your fellow jurors as to their views on their opinions and give consideration to what they say. Some jury is going to have to decide this case and you have heard the evidence and the next jury will probably have to hear the same evidence and make a decision. If you can make a decision without any of you surrendering your conscientious opinion, I certainly hope you will be able to do so. If you can't, you can't. I do want you to go back and give the matter further consideration. So you may retire."

Thereafter, and following further deliberation, the jury returned to the courtroom with its verdict. At no time during the course of the trial and prior to his motion to set the verdict aside did defendant's counsel object to this action by the trial judge. Irrespective of this, we have no difficulty in holding that the charge complained of was not coercive, and was well within the discretion of the trial court in an effort to have the jury agree on a verdict. We have heretofore approved variations of the "Allen charge" [*Allen* v. *United States*, 164 U. S. 492 (1896)] in the civil cases of *Petcosky* v. *Bowman*, 197 Va. 240, 89 S. E. 2d 4 (1955) and *Mills* v. *Wells*, 204 Va. 173, 129 S. E. 2d 705 (1963). In *Petcosky* v. *Bowman*, *supra*, we said:

"It is well settled that when jurors have announced their inability to agree it is within the discretion of the trial court to urge on them an earnest effort to reach an agreement. In doing so, the court may point out the importance of their reaching an agreement and their duty to do so if they can without surrendering their individual consciences. . . . While there is some conflict on the subject, the great weight of authority is that in urging the jury to agree the court may detail to them such matters as the expense of the trial, the time it has taken to try the case, the trouble and inconvenience involved, and the fact that in the event of a disagreement the case will have to be decided by some jury on the same pleadings and in all probability on the same evidence. [Citing authorities.]" 197 Va. at 252-53, 89 S. E. 2d at 13.[1]

---

[1] The United States Courts of Appeals for the Third, Seventh and D. C. Circuits have held that the "Allen charge" should no longer be used in those circuits and that further jury instructions of that type must conform to the standard approved

■ Defendant complains of the action of the trial court in refusing to grant the following instructions:

"Instruction No. E: The Court instructs the jury that if you believe from the evidence in this case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, Joan Copeland, then you should scrutinize her testimony with care and caution."

"Instruction No. F: The Court instructs the jury that if upon a fair and impartial consideration of all the evidence of this case you believe that the act of carnal intercourse took place between the defendant and the prosecutrix, then it becomes the duty of the jury to determine whether or not such carnal intercourse was accomplished by force and against the will of the prosecutrix or otherwise, and if the jury entertain a reasonable doubt as to whether it was accomplished by force and against the will of the prosecutrix, such doubt is decisive, must be resolved in favor of the accused, and it is the duty of the jury to find the accused not guilty of the crime of rape."

"Instruction No. H: The Court instructs the jury that if you be-

by the American Bar Association. See *U.S.* v. *Fioravanti,* 412 F. 2d 407 (3rd Cir. 1969), *U. S.* v. *Brown,* 411 F. 2d 930 (7th Cir. 1969), *U. S.* v. *Thomas,* 449 F. 2d 1177 (D. C. Cir. 1971).

The American Bar Association's proposed standards for trial by a jury contains the following provisions:

"5.4. *Length of deliberations; deadlocked jury.*

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." 3 CrL 3215.

lieve from the evidence that the prosecutrix, Joan Copeland, delayed for an unreasonable time to make known the alleged offense committed against her and she has not satisfactorily explained the cause of such delay, such delay may be taken into consideration by the jury, in favor of the accused, and unless you believe from all the evidence in this case beyond a reasonable doubt, that the defendant did by force and against the will of the prosecutrix have sexual intercourse with her, then you should find him not guilty as charged in the indictment."

"Instruction No. I: The Court instructs the jury that although you may believe from the evidence that the accused used some force in order to have intercourse with the prosecutrix, still, notwithstanding such use of force, if the jury believe from the evidence that at any time before the accomplishment of the act she yielded and consented to the act, or if you entertain a reasonable doubt on that score, you must acquit the accused of rape."

Instruction E was properly refused. It is not essential in a rape case for the prosecutrix to be corroborated and her testimony alone is sufficient to sustain a conviction. *Fogg* v. *Commonwealth*, 208 Va. 541, 159 S. E. 2d 616 (1968); *Hammer* v. *Commonwealth*, 207 Va. 159, 148 S. E. 2d 896 (1966); *Robinson* v. *Commonwealth*, 197 Va. 754, 91 S. E. 2d 396 (1956). An instruction very similar to Instruction E was disallowed in *Taylor* v. *Commonwealth*, 180 Va. 413, 23 S. E. 2d 139 (1942).

■ The trial judge gave defendant four instructions and the Commonwealth one which in varying ways told the jury that to convict defendant it must find that the act of intercourse was accomplished with force and against the will of the prosecutrix. The court correctly refused Instruction F for it was fully covered by other instructions.

■ Defendant's Instruction H would have submitted to the jury the question of the alleged delay of Mrs. Copeland in reporting the offense committed against her, and again told the jury that the intercourse had to be accomplished by defendant with force and against the will of the prosecutrix. The court properly refused this instruction for the evidence fails to show any unreasonable or unexplained delay on the part of the prosecutrix in reporting the assault on her.

Defendant's Instruction I was repetitious of Instruction 5 which was granted by the court and reads as follows:

"Instruction No. 5: The Court instructs the jury that to sustain the charge of rape, there must be evidence of some array or show of force in form sufficient to overcome resistance, but the woman is not required to resist to the utmost of her physical strength, if she reasonably believes resistance would be useless and result in serious bodily injury to her.

"In this connection, you may consider the time, place and the relative physical strength and endurance of the prosecutrix and the defendant, the whole situation as it confronted her and all of the circumstances disclosed by the evidence."

The above Instruction 5 finds support in our decision in *Bradley* v. *Commonwealth*, 196 Va. 1126, 86 S. E. 2d 828 (1955).

We find no error in the instructions granted or refused by the trial judge. The jury was fully and fairly instructed on the law of the case.

Defendant assigns error to the action of the trial court in refusing to grant a mistrial at the time the assistant Commonwealth's Attorney asked a witness if he knew whether or not defendant had ever been convicted of a felony or crime involving moral turpitude. The witness replied: "No, ma'am, I don't think so." The trial judge immediately interposed: "That question is entirely improper. You can't prove that." Counsel for defendant moved for a mistrial. The court overruled the motion, and instructed the jury as follows: "Ladies and Gentlemen, disregard any remark she made about any prior conviction. There is no evidence he has been convicted of anything. So we just ask you to disregard the remark."

While the question was improper the trial judge noted its impropriety and moved promptly to instruct the jury to disregard the remark. Further it will be noted that the answer of the witness was favorable to the defendant.

In *McLane* v. *Commonwealth*, 202 Va. 197, 203-04, 116 S. E. 2d 274, 280 (1960) a similar occurrence took place and there we pointed out: "No improper testimony was admitted in response to the question of the Commonwealth's Attorney, and the court took prompt, direct and positive action in instructing the jury to disregard the question and all of its effects."

We hold that any error here by reason of the incident was likewise cured by the trial court's prompt and judicious action.

Defendant also complains of a reference made by the assistant

Commonwealth's Attorney in her opening and closing arguments to the interracial character of the victim's marriage and a plea by her for the jury to be color-blind. No objection was made to the statements prior to the verdict of the jury and the objection now comes too late. The record shows that the victim of the defendant's assault was a white woman married to a Negro man. The interracial character of the marriage was obvious to the jury. Further, the statement that the jury be "color-blind" and that it wasn't there "to make a moral judgment but rather to determine whether there has been a violation of the law", could hardly be termed an inflammatory statement or one calculated to influence the jury to act otherwise than in a fair manner. Most assuredly it did not constitute prejudicial error.

We have carefully considered all assignments of error made by defendant, and the several other incidents that occurred during the trial which he feels may have influenced the jury's verdict. We find no reversible error in the record.

*Affirmed.*