## Richmond

TOMMY ALLEN SNYDER

v.

COMMONWEALTH OF VIRGINIA

February 29, 1980.

Record No. 790823.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

*Clinton B. Corry, Jr. (Corry and Corry,* on brief), for appellant.
*Linwood T. Wells, Jr., Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

Indicted for rape and burglary with intent to commit rape, the defendant, Tommy Allen Snyder, was tried by a jury and convicted of both charges. Sentenced in accordance with the jury's verdicts to a term of five years in the penitentiary on each charge, the defendant seeks reversal on the grounds that the evidence was insufficient to sustain the convictions and that the trial court erred in refusing two defense instructions.

The prosecutrix resided with a roommate, Brenda Wood, in the Highland Park section of Henrico County. According to the prosecutrix, her roommate drove her home from work around 9:35 p.m. on June 26, 1978. When Brenda went out for the evening, the prosecutrix closed the front door of the home but, at Brenda's request, did not lock it. The rear door was closed and locked. The windows were either closed or covered with screens.

Clad only in underpants, the prosecutrix retired about 10:00 p.m.

Later, she was awakened by two telephone calls, one at midnight from a person she was not asked at trial to identify, and the other around 1:30 a.m. from an acquaintance, Bruce Powers. She agreed to Powers' request that he be permitted to "come over" later in the night.

The prosecutrix reawakened "when the light went on in the bedroom." She looked up and saw a strange man standing in the doorway. Momentarily, he sat down on the bed and asked the prosecutrix her name. She tried to move away, and he pulled from her a sheet with which she was trying to cover herself. He pushed her "flat down on the bed," whereupon she began to "scream and cry." He then put his arm across her shoulders and throat, "cutting off the wind," and told her that "if [she would] be quiet [she] wouldn't get hurt." She told him to "get out, that [she] didn't want him there," but "[e]very time [she] started to open [her] mouth he'd cover it with his other hand and tell [her] to shut up." She was "real upset" and "too scared to say anything else." When he had her "completely locked against the bed," he removed her underpants and proceeded to rape her.

After observing her assailant depart by the front door and walk away from her home, the prosecutrix returned to bed until, about 15 minutes later, she heard the sound of an automobile outside. Brenda Wood and Bruce Powers had arrived at the same time, and, when the prosecutrix recognized her friends, she ran from the house to meet them. In a hysterical condition, she reported to them that she had been raped. At Brenda's insistence, the police were called, and the prosecutrix was taken to a hospital. An examination confirmed that the prosecutrix had recently engaged in intercourse, but no bruises or lacerations were found upon her body.

Following the examination, the prosecutrix went to police headquarters. There, she assisted in the preparation of a composite drawing of her assailant and, from a photographic display, identified the defendant as her attacker. In court, her identification of the defendant was positive. Throughout her testimony, she insisted that she had never seen the defendant before the night of the alleged attack.

Testifying for the Commonwealth, Brenda Wood and Bruce Powers confirmed that, on the night in question, the prosecutrix had reported to them that she had been raped. Brenda also confirmed that she, Brenda, had insisted upon calling the police. Brenda denied, however, that she had driven the prosecutrix home on the evening in question and that she had asked the prosecutrix to leave the door to their home unlocked. Rather, Brenda stated, the prosecutrix later told her the

door had been left unlocked for Bruce Powers. Brenda testified further that, approximately one month after the alleged attack, the prosecutrix told her that the defendant had not raped her. According to Brenda, the prosecutrix admitted that she had previously met the defendant and that, although she was not expecting him on the night in question, when he arrived and suggested that they have intercourse, she agreed. The prosecutrix was afraid, however, Brenda stated, that Terry McGann, to whom the prosecutrix had been engaged, would "find out about [the defendant] being over there."

Brenda Wood testified further that the prosecutrix's general reputation for chastity was "[n]ot very good." At the time Brenda testified, however, she and the prosecutrix were no longer roommates or friends, and the prosecutrix was a Commonwealth's witness in felony and misdemeanor charges then pending against Brenda.

Testifying for the defendant, Forrest Gardner stated that he had dated the prosecutrix for a brief period in the spring of 1978. He testified further that, when be broke off relations with her, he gave the defendant her name and telephone number and told him she was a "right wild girl." The prosecutrix's general reputation for chastity, Gardner testified, was "right bad."

Taking the stand in his own defense, the defendant testified that, employing the phone number Forrest Gardner had given him, he had called the prosecutrix on three occasions and made dates to see her at her home.* Each time, according to the defendant, the prosecutrix voluntarily had intercourse with him. On the occasion in question, he telephoned the prosecutrix around midnight, secured her agreement that he visit her, and drove to her home. After knocking on the front door, he walked in, proceeded to her bedroom, and, with her consent, had intercourse with her. Afterward, the two talked, and he told her he knew Terry McGann and had "beat him" in a fight several years earlier. Apparently fearful that McGann would learn of her relationship with the defendant, the prosecutrix became upset and began crying and calling the defendant names. Unable to calm her, the defendant departed.

On the night of the alleged attack, warrants were issued for the defendant's arrest. Aware that the warrants were outstanding, the defendant, a convicted felon, eluded arrest for approximately one and one-half months. He finally surrendered to police on August 10, 1978.

---

* James Porch, a witness called by the defense, testified that he had seen the defendant enter the prosecutrix's home one evening several weeks before June 26, 1978, the date of the alleged attack.

*The Rape Conviction*

■ With respect to his rape conviction, the defendant contends that the conviction must be set aside because there is insufficient evidence of force on his part and of protest or resistance on the part of the prosecutrix. The only testimony on these essential elements came from the prosecutrix herself, the defendant maintains, and her testimony is inherently incredible and so contrary to human experience or usual human behavior as to render it unworthy of belief.

We disagree with the defendant. Admittedly, to sustain a conviction of forcible rape, there must be evidence of some array or show of force sufficient to overcome resistance. But the victim is not required to resist to the utmost of her physical strength if she reasonably believes that resistance would be useless and would cause her serious bodily harm. *Barnett* v. *Commonwealth,* 216 Va. 200, 202, 217, S.E.2d 828, 829-30 (1975). And a conviction of rape may be sustained solely upon the testimony of the prosecutrix. *Poindexter* v. *Commonwealth,* 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972).

A rape conviction cannot be sustained, of course, if the testimony of the prosecutrix is inherently incredible or so contrary to human experience or usual human behavior as to render it unworthy of belief. *Willis & Bell* v. *Commonwealth,* 218 Va. 560, 563, 238 S.E.2d 811, 812-13 (1977). A reading of the record in this case, however, fails to convince us that the prosecutrix's testimony suffered these fatal deficiencies.

■ There was nothing improbable about the prosecutrix's story. While there were conflicts in her testimony, they were not so material or so unusual that her version of the events on the night in question was rendered unbelievable as a matter of law. And, although material portions of her testimony were contradicted by Brenda Wood and other witnesses, these contradictions did not conclusively destroy the prosecutrix's credibility. What this case presents is a typical situation where the prosecutrix maintains that she was forced by the accused to have intercourse with him and he insists that the act occurred with her consent. Accordingly, the case is subject to the general rule that whether the act was forcible or consensual was a question for the jury to decide. *Wansley* v. *Commonwealth,* 205 Va. 412, 414, 137 S.E.2d 865, 867 (1964), *cert. denied,* 380 U.S. 922 (1965).

■ The defendant contends, however, that his theory of defense to the rape charge was not fully presented to the jury because of the trial court's failure to grant Instruction No. G, which read:

"The Court further instructs the jury that where consent is advanced as a defense to a charge of rape, the previous unchaste character of the prosecutrix may be shown by proof of general reputation to show the probability of consent by the prosecutrix to the act of intercourse with the defendant, and that this evidence, when proven, is a fact to be considered by the jury in determining the guilt or innocence of the defendant."

This instruction, the defendant says, "was based on" the case of *Wynne* v. *Commonwealth,* 216 Va. 355, 218 S.E.2d 445 (1975), in which this court recognized the rule that "where consent is advanced as a defense to a charge of rape, the previous unchaste character of the prosecutrix may be shown by proof of general reputation." 216 Va. at 356, 218 S.E.2d at 446. This court went further, however, the defendant asserts, and stated that "[s]uch evidence is relevant and admissible, within the recognized limits, to show the probability of consent by the prosecutrix." *Id.* He proved that the prosecutrix was of unchaste character, the defendant asserts, and he was entitled to have the jury told that such proof established "the probability of her consent to the act of intercourse."

The *Wynne* case, however, did not involve the propriety of an instruction upon the subject of unchaste character. Instead, the case dealt with the admissibility of evidence concerning such character. Admittedly, in the course of the opinion, we did use language which the defendant has repeated in his Instruction No. G. But, as we said in *Oak Knolls Realty* v. *Thomas,* 212 Va. 396, 397, 184 S.E.2d 809, 810 (1971), "statements appearing in opinions of this court, while authority for the propositions set forth, are not necessarily proper language for jury instructions."

In refusing Instruction No. G, the trial court stated that "to give it would be a comment on the evidence by the Court as to a specific part of the evidence which is totally unpermitted under the law." We agree with the trial court. The instruction improperly would have singled out one portion of the evidence, *viz.,* that relating to the unchaste character of the prosecutrix, and would have unduly emphasized it over other facts equally pertinent to the jury's resolution of the issue of consent. *See Woods* v. *Commonwealth,* 171 Va. 543, 547-48, 199 S.E. 465, 467 (1938).

We find no error in the refusal of Instruction No. G. Having held earlier that the evidence was sufficient to sustain the rape conviction, we will affirm that conviction.

### The Burglary Conviction

■ The defendant contends that the evidence was insufficient to sustain his conviction of breaking and entering with intent to commit rape. He argues that the only credible evidence in the record shows that he entered the prosecutrix's home with her permission, not by breaking, and that he harbored only the intent to have consensual intercourse with the prosecutrix, not the intent to commit rape.

We believe, however, that, as with the rape case, the evidence concerning the burglary charge presented a situation of conflict for jury resolution. Under the evidence, the jury could have found the defendant guilty of the burglary charge if it believed that, without permission, he opened and entered the closed, although unlocked, front door of the prosecutrix's home and, at the same time, harbored an intent to commit rape. Or, the jury could have acquitted the defendant of the burglary charge if it believed (1) that he entered the home, with or without permission, intending only to have consensual intercourse with the prosecutrix, or (2) that he entered the home with permission but without an intent to commit rape and later formed the rape intent.

■ The difficulty with the defendant's burglary conviction, however, is that the trial court refused an instruction, No. D, which would have informed the jury of the important role the presence or absence of permission played in the various alternatives listed above. Instruction No. D read:

> "In order to prove a breaking of the premises the burden is upon the Commonwealth to prove by the evidence beyond a reasonable doubt that entrance to the premises was contrary to the will of the occupier of the house. And if you believe from the evidence that the defendant had been permitted to come into and go from the building with consent of [the prosecutrix] or if you have a reasonable doubt as to whether the defendant's entrance was against the will of [the prosecutrix], then you cannot find the defendant guilty of burglary."

The Attorney General concedes that Instruction No. D sets forth a correct statement of the law. He argues, however, that the content of the instruction was covered by other instructions and that the refusal to grant No. D, if error, was harmless.

We disagree with the Attorney General. The only instructions granted by the trial court concerning the charge of burglary were

couched in prosecution language and only implicitly required the jury to negate the presence of permission in order to convict. We believe that the defendant was entitled to have his permission theory stated in defense language expressly requiring the jury, before it could convict, to find that the entry was contrary to the will of the prosecutrix. Instruction No. D properly would have served this purpose, and it was error to refuse it. *See Davis* v. *Commonwealth,* 132 Va. 521, 110 S.E. 356 (1922). For this error, the defendant's burglary conviction will be reversed, and the burglary case will be remanded for a new trial.

*Affirmed in part,*
*reversed in part,*
*and remanded.*