BENTON, J., with whom FITZPATRICK, C.J.,
joins, concurring, in part, dissenting, in part, and concurring in the judgment reversing the convictions.
I agree with the majority opinion that the trial judge erred in denying the motion to suppress. I believe, however, that each of Curtis Darnell Hilliard’s three assertions were unequivocal requests for an attorney, and, therefore, I would hold that any statements he made after his first request for an attorney should be suppressed.
I.
Under the standard announced by the Supreme Court, Hilliard asserted his Fifth Amendment right to counsel.
Courts [are required] to “determine whether the accused actually invoked his right to counsel.” To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the Miranda right to counsel “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.” But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *679 might be invoking the right to counsel, our precedents do not require the cessation of questioning.
Rather, the suspect must unambiguously request counsel. As we have observed, “a statement either is such an assertion of the right to counsel or it is not.” Although a suspect need not “speak with the discrimination of an Oxford don,” he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attórney.
Davis v. United States, 512 U.S. 452, 458-59, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994) (citations omitted).
The detectives began the interrogation by telling Hilliard they were there to “get some things straight” and to “hear what [Hilliard] had to say.” After a detective told Hilliard he had to read a form to him that must be read to every person before an interview, he read the Miranda warnings to Hilliard. He asked Hilliard to sign the form acknowledging that the warnings were read to him and then sign again indicating the detectives could talk to him. Before Hilliard signed the form, he made the first of three requests for a lawyer. Hilliard said, “Can I have somebody else present too, I mean just for my safety, like a lawyer like y’all just said?” One of the detectives responded that they were just trying to get his side of the story and said they could talk after he signed the form. When Hilliard signed the form, the detectives continued the interrogation. Hilliard then said, “Like I said, I would like to have somebody else in here.” The interrogation continued.
During lengthy dialogues, the detectives told Hilliard that more than two people identified him as the killer and said they had sufficient evidence to convict him but wanted to know his side of the story. Hilliard denied being involved in the killing. As the detectives showed him a diagram of the location of the murder and continued to interrogate him, Hilliard said, “Can I get a lawyer in here?” Although Hilliard expressed discomfort with continuing the interrogation without assistance, the detectives failed to honor his requests.
*680 Hilliard’s statements were “appropriate responses to the warnings, which gave [him] the choice of speaking with the detective without an attorney or having an attorney present while the detective questioned him.” McDaniel v. Commonwealth, 30 Va.App. 602, 606, 518 S.E.2d 851, 853 (1999). To deny that each of Hilliard’s three “ ‘statements ... can reasonably be construed to be an expression of a desire for the assistance of an attorney,’ ” Davis, 512 U.S. at 459, 114 S.Ct. at 2355, is to disadvantage Hilliard because of his lack of linguistic skills and to impose upon him the very requirement that the Supreme Court has expressly rejected—that he “need not ‘speak with the discrimination of an Oxford don.’ ” Id. (citation omitted). Under the circumstances, Hilliard “articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand [each of] the statements] to be a request for an attorney.” Id. Thus, the trial judge erred in failing to suppress the statements, all of which were obtained in violation of Hilliard’s Fifth Amendment rights.
II.
In his motion to suppress, Hilliard alleged that “evidence was obtained dining that interview ... in violation of the fourth, fifth and sixth amendments of the Constitution of the United States.” I would hold that this motion was sufficient to apprise the trial judge of the action Hilliard desired the judge to take and the legal basis for the motion. See Code § 8.01-384 (providing that “[n]o party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal”). I would also hold, therefore, that Rule 5A:18 does not preclude this Court from considering Hilliard’s claim of a Sixth Amendment violation.
Recently, the United States Supreme Court addressed this precise Sixth Amendment protection.
The Sixth Amendment right to counsel is triggered “at or after the time that judicial proceedings have been initiated *681 ... “whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.’ ” Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, [1239,] 51 L.Ed.2d 424 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, [1882,] 32 L.Ed.2d 411 (1972)). We have held that an accused is denied “the basic protections” of the Sixth Amendment “when there [is] used against him at his trial evidence of his own incriminating words, which federal agents ... deliberately elicited from him after he had been indicted and in the absence of his counsel.” Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, [1203,] 12 L.Ed.2d 246 (1964); cf. Patterson v. Illinois, supra (holding that the Sixth Amendment does not bar postindictment questioning in the absence of counsel if a defendant waives the right to counsel).
Fellers v. United States, 540 U.S 519,-, 124 S.Ct. 1019, 1022 (2004).
Under the circumstances I have addressed above, the record clearly established that the officers interrogated Hilliard post-indictment and ignored his invocation of his right to an attorney. Indeed, Hilliard told the detectives: “I already have a lawyer. I would feel more comfortable with him here.” Yet, the interrogation continued in violation of the Sixth Amendment. I would hold, therefore, that the trial judge erred in failing to suppress the statements.
III.
For these reasons, I would hold that the trial judge erred in denying the motion to suppress the incriminating statements, and I would reverse the convictions and remand for a new trial.
CLEMENTS, J., with whom BUMGARDNER, FELTON and KELSEY, JJ.,
join, concurring, in part, and dissenting, in part.
I join with that portion of Judge Humphreys’s opinion holding that, having failed to properly preserve his claim that *682 his Sixth Amendment right to counsel was violated, Hilliard is barred from raising that issue for the first time on appeal. I further concur with Judge Humphreys’s decision that neither of Hilliard’s first two purported requests for an attorney during the custodial interrogation constituted a clear invocation of the Miranda right to counsel. However, I disagree with Judge Humphreys and Judge Benton’s view that Hilliard’s third “request” was a “clear and unequivocal request for counsel,” requiring the cessation of the interrogation and the suppression of Hilliard’s subsequent inculpatory statements. Hence, I respectfully dissent from the majority’s decision that the trial court erred in denying Hilliard’s motion to suppress his inculpatory statements to police, and, for the reasons that follow, I would affirm Hilliard’s convictions.
I. MOTION TO SUPPRESS
Hilliard contends, on appeal, that he made three requests for an attorney during the September 16, 1999 custodial interrogation by police. He argues that his clear invocation of his Miranda right to counsel required the immediate cessation of the interrogation and the suppression of the incriminating statements he thereafter gave to police when the interrogation was not terminated. Finding that Hilliard’s purported requests for counsel were not clear and unequivocal invocations of his Miranda right to counsel, I would hold that the trial court did not err in denying the motion to suppress.
It is well settled that “law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation.” Davis v. United States, 512 U.S. 452, 454, 114 S.Ct. 2350, 2352,129 L.Ed.2d 362 (1994) (citing Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). In Davis, the Supreme Court held that, “[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations,” the determination whether an accused invoked the Miranda right to counsel is “an objective inquiry.” Id. at 458-59, 114 S.Ct. at 2355. The Supreme Court also held, in Davis, that, to invoke the Miranda right to counsel, “[t]he *683 suspect must unambiguously request counsel.” Id. at 459,114 S.Ct. at 2355. The suspect’s reference to counsel “ ‘either is such an assertion of the right to counsel or it is not.’ ” Id. (quoting Smith v. Illinois, 469 U.S. 91, 97-98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984) (per curiam) (brackets and internal quotation marks omitted)). The Supreme Court explained that, “[although a suspect need not ‘speak with the discrimination of an Oxford don,’ he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Id. (quoting id. at 476, 114 S.Ct. at 2364 (Souter, J., concurring in judgment)). Thus, the Court explained further, “if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,” the interrogation need not be ceased. Id. at 459, 114 S.Ct. at 2355. In other words, “after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly[, unambiguously, and unequivocally] requests an attorney.” Id. at 461, 114 S.Ct. at 2356. To require otherwise, the Court noted, “ “would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity.’ ” Id. at 460, 114 S.Ct. at 2356 (quoting Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)).
Aware that its rule requiring suspects wanting assistance of counsel to clearly, unambiguously, and unequivocally invoke the Miranda right to counsel was not without its drawbacks, the Supreme Court farther noted, in Davis, as follows:
We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who—because of fear, intimidation, lack of linguistic skills, or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves. “Full comprehension of the rights to remain silent *684 and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process.” A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although Edwards provides an additional protection—if a suspect subsequently requests an attorney, questioning must cease—it is one that must be affirmatively invoked by the suspect.
Id. at 460-61, 114 S.Ct. at 2356 (quoting Moran v. Burbine, 475 U.S. 412, 427, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410 (1986)).
The Supreme Court also noted that,
when a suspect makes an ambiguous or equivocal statement,] it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.... Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect’s statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect’s statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.
Id. at 461-62, 114 S.Ct. at 2356.
The Supreme Court concluded, in Davis, that the appellant’s statement during the custodial interrogation, “Maybe I should talk to a lawyer,” did not constitute a clear, unambiguous, and unequivocal request for an attorney and, hence, “was not a request for counsel” requiring cessation of the interrogation or suppression of appellant’s subsequent inculpatory admissions. Id. at 462, 114 S.Ct. at 2357.
In Commonwealth v. Redmond, 264 Va. 321, 330, 568 S.E.2d 695, 700 (2002) (plurality opinion), our Supreme Court found that the defendant’s questions during the custodial interrogation, “Can I speak to my lawyer? I can’t even talk to [a] lawyer before I make any kinds of comments or anything?,” *685 did not constitute “a clear and unambiguous assertion of his right to counsel.” In reaching that decision, the Court applied the “substantive principles articulated by the [United States] Supreme Court” in Davis, as well as its own precedent, about which it stated as follows:
Prior to the Supreme Court’s decision in Davis, this Court consistently held that a clear and unambiguous assertion of the right to counsel is necessary to invoke the rule [requiring the police to cease an interrogation when the accused requests counsel]. See Mueller v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992) (defendant’s question “Do you think I need an attorney here?” not a clear assertion of right to counsel), cert. denied, 507 U.S. 1043, 113 S.Ct. 1880, 123 L.Ed.2d 498 (1993); Eaton v. Commonwealth, 240 Va. 236, 250, 252-54, 397 S.E.2d 385, 393, 395-96 (1990) (defendant’s question “You did say I could have an attorney if I wanted one?” not a clear assertion of right to an attorney), cert. denied, 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991); Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823 (defendant’s question “Didn’t you say I have the right to an attorney?” not a clear assertion of right to counsel), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 158 (1985). And, this Court applied Davis in Midkiff v. Commonwealth, 250 Va. 262, 266-67, 462 S.E.2d 112, 115 (1995) (defendant’s statement “I’ll be honest with you, I’m scared to say anything without talking to a lawyer” not a clear assertion of right to counsel).
Id. at 329-30, 568 S.E.2d at 699-700. Holding that “a reasonable police officer ... would have concluded that the defendant did not invoke his right to counsel during the custodial interrogation,” the Supreme Court upheld the trial court’s denial of the defendant’s motion to suppress the confession he made during the interrogation. Id. at 330, 568 S.E.2d at 700.
Here, the facts pertinent to the third purported request for counsel are undisputed. Approximately an hour after waiving his Miranda rights, Hilliard asked the detectives conducting *686 the interrogation, “Can I get a lawyer in here?” The following exchange then took place:
DETECTIVE WHITE: Do you want to do that?
HILLIARD: I already have a lawyer. I mean, I can talk to you, don’t get me wrong. But I just want to make sure I don’t, like I said before, just jam myself up. And I’ll tell you everything that I know. This is my word.
DETECTIVE WHITE: Okay. That’s fine.
DETECTIVE KOCHELL: That’s fine.
HILLIARD: I’m not saying that I will say anything other or just because he’s in here. I just want to, you know, make sure I have ... I’d feel a little bit more comfortable.
DETECTIVE KOCHELL: That’s not a problem. We tried to provide you with a comfortable atmosphere here. And, like I said, it’s not the stuff that you see on TV dealing with Sipowicz, where he takes a guy and throws him up on the wall. That’s not what we’re about.
HILLIARD: I will say, I will go as far as to say this. Probably what you all got in that book ain’t nowhere near.
DETECTIVE WHITE: Talking about what?
HILLIARD: I’m just saying, what you all probably have in that book, I doubt that it’s anywhere near it.
DETECTIVE WHITE: Anywhere near ... of what we know of why it happened?
HILLIARD: Yeah.
DETECTIVE WHITE: Well, that’s why we want to hear from you, because we know there’s a bigger picture there. Okay? You know what the problem is, Curtis, is that you got caught up in it.
HILLIARD: Yeah, I did. I was there. I’m going to just say that, I was there. But before I say anything else, I mean, I already talked to you before we go to court.
I do not believe that a reasonable police officer in these circumstances would have understood Hilliard’s question, “Can I get a lawyer in here?,” to be an unequivocal request for an attorney within the meaning of Davis or Redmond. Certain *687 ly, Hilliard’s question is no less equivocal than his first two purported requests for counsel or the defendant’s question in Redmond, “Can I speak to my lawyer?” At best, “a reasonable officer in light of the circumstances would have understood only that [Hilliard] might be invoking the right to counsel.” Davis, 512 U.S. at 459, 114 S.Ct. at 2355. Likewise, Hilliard’s statements and actions in response to the detective’s follow-up clarifying question, “Do you want to do that?,” were equivocal. Instead of directly answering the detective’s question in the affirmative, Hilliard again merely “expressed] his reservation about the wisdom of continuing the interrogation without consulting a lawyer” and continued talking to the detectives in a manner that did “not clearly and unambiguously communicate a desire to invoke his right to counsel.” Midkiff, 250 Va. at 267, 462 S.E.2d at 115. Thus, under these circumstances, a reasonable police officer would not have necessarily understood Hilliard to be making an unequivocal request for an attorney. Consequently, because “the likelihood that a suspect would wish counsel to be present is not the test for applicability of [the rule requiring cessation of the interrogation if the suspect requests counsel],” McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991), Hilliard’s reference to a lawyer, like those of the defendants in Davis and Redmond, “fell short of requesting counsel in a clear and unambiguous manner,” Midkiff, 250 Va. at 267, 462 S.E.2d at 115.
I conclude, therefore, that Hilliard’s third purported request for an attorney did not constitute a clear, unambiguous, and unequivocal invocation of the Miranda right to counsel requiring the cessation of the interrogation and the suppression of Hilliard’s subsequent inculpatory statements. Accordingly, I would hold that the trial court did not err in denying Hilliard’s motion to suppress his admission that he was at the scene of the crime.
II. ALLEN CHARGE
Hilliard further contends, on appeal, that the trial court’s comments to the jury after receiving notification from the jury *688 during its deliberations in the guilt phase of the trial that it was “split 10-2” and could not “reach a unanimous decision” were improper. The court’s comments, Hilliard argues, “suggested that the jury would be kept until unanimity was reached” and amounted to a coercive Allen[4] charge that, in effect, instructed the two jurors in the minority to change their votes.
The Commonwealth contends that Rule 5A:18 bars this Court’s consideration of this issue, because Hilliard made no contemporaneous objection to the judge’s remarks. I agree with the Commonwealth.
In applying Rule 5A:18, this Court has held that,
[wjhere an accused alleges that the trial court has made improper remarks in the presence of the jury but fails contemporaneously to object, request a cautionary instruction or move for a mistrial, he waives the right to challenge those remarks on appeal. “A motion for a mistrial is untimely and properly refused when it is made after the jury has retired.”
Humbert v. Commonwealth, 29 Va.App. 783, 791, 514 S.E.2d 804, 808 (1999) (citations omitted) (quoting Cheng v. Commonwealth, 240 Va. 26, 39, 393 S.E.2d 599, 606 (1990)).
In this case, Hilliard made no contemporaneous objection to the trial court’s remarks. While he initially objected to the giving of an Allen charge, once the trial court stated its intentions and gave its remarks, Hilliard did not contemporaneously object. Indeed, he did nothing before the jury retired to apprise the trial court that the remarks were erroneous or improper in any way. He neither requested a cautionary instruction nor moved for a mistrial. It was not until sentenc *689 ing, several weeks later, that he moved to have the verdict set aside. The issue, therefore, was not properly preserved.
Moreover, my review of the record in this case does not reveal any reason to invoke the “good cause” or “ends of justice” exceptions to Rule 5A:18. Consequently, I would hold that this claim of error is procedurally barred.
III. SENTENCING INSTRUCTION
Hilliard also contends, on appeal, that the trial court failed to properly instruct the jury that multiple sentences are presumptively consecutive. He also contends the trial court failed to properly instruct the jury on the possibility of parole, specifically the singular circumstance of geriatric release.
The Commonwealth contends that Rule 5A:18 likewise bars this Court’s consideration of these issues, because Hilliard did not object to the instruction the trial court gave in response to the jury’s questions concerning parole and the concurrency of the sentences. Again, I agree with the Commonwealth.
Although Hilliard initially asked the trial court to answer the jury’s questions by instructing the jury that multiple sentences are presumptively consecutive, he made no contemporaneous objection to the trial court’s reasoning and ruling to the contrary or to the court’s instruction in response to the jury’s question regarding the concurrency of the sentences. Likewise, Hilliard made no contemporaneous objection to the court’s instruction with respect to the issue of parole. Hilliard’s failure to properly preserve these issues precludes this Court from considering his “challenges to jury instructions raised for the first time on appeal.” Commonwealth v. Jerman, 263 Va. 88, 93-94, 556 S.E.2d 754, 757-58 (2002) (holding that defendant “was required to state any objection to the circuit court’s instruction and to ask the court for any other instruction on the subject that he deemed necessary” and his failure to timely do so “bars his present challenge to that instruction”); see also Cherrix v. Commonwealth, 257 Va. 292, 311, 513 S.E.2d 642, 654 (1999) (holding that defendant’s “failure to proffer a parole eligibility instruction and his failure *690 to object to the trial court’s instruction in response to the jury’s inquiry ... precludes us from addressing the merits of this assignment of error”); Rule 5A:18. Hence, finding no reason to invoke the “good cause” or “ends of justice” exceptions to Rule 5A:18, I would hold that this claim of error is also procedurally barred.
IV. CONCLUSION
For these reasons, I would affirm Hilliard’s convictions.

. "The so-called ‘Allen charge’ is based upon the United States Supreme Court decision in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Virginia Supreme Court has approved use of the ‘Allen instruction.” Gardner v. Commonwealth, 3 Va.App. 418, 419 n. 1, 350 S.E.2d 229, 229 n. 1 (1986) (citing Poindexter v. Commonwealth, 213 Va. 212, 215, 191 S.E.2d 200, 203 (1972)).