COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, O'Brien and Senior Judge Clements
Argued by videoconference


RAKIM MALIK NOTTINGHAM

OPINION BY
v.        Record No. 0340-20-1        JUDGE MARY GRACE O'BRIEN
MAY 25, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Glenn R. Croshaw, Judge[1]

Thomas H. Sheppard, II (Sheppard Law, P.L.C., on brief), for
appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Rakim Malik Nottingham ("appellant") of rape, in violation of Code

§ 18.2-61, forcible sodomy, in violation of Code § 18.2-67.1, malicious wounding, in violation of

Code § 18.2-51, and three counts of using a firearm in the commission of a felony, in violation of

Code § 18.2-53.1.  Appellant contends the court erred by granting a jury instruction that convictions

for rape and forcible sodomy "may be supported solely upon the testimony of the victim without

further corroboration, if believed."  He also assigns error to the court's refusal to admit the victim's

videotaped statement to a law enforcement officer as impeachment evidence.

---

[1] The Honorable Glenn R. Croshaw presided over the sentencing hearing and entered the
final sentencing order.  The Honorable H. Thomas Padrick, Jr., presided over the proceedings
addressed in this opinion.

BACKGROUND

Appellant arranged to meet A.K. on February 1, 2015, at a Virginia Beach motel and pay her two hundred dollars for sex. A.K. testified that she was willing to engage in oral and vaginal sex, but not anal sex.

When appellant arrived at A.K.'s motel room, he asked to use her bathroom. He exited the bathroom pointing a gun at A.K. and stated, "You know what the fuck this is." Appellant told A.K. to put her two dogs in the bathroom, and A.K., who was "frantic," complied. Appellant demanded money and marijuana, and A.K. told him that she "didn't smoke weed" but gave him twenty dollars from her nightstand.

Keeping his gun aimed at A.K., appellant forced her to perform oral sex on him. When A.K. protested, he told her to "[s]hut up," and he "hit [her] with his fist . . . [o]n the left side of [her] face." Appellant put on a condom that he retrieved from A.K.'s nightstand drawer and raped and anally sodomized her. A.K. cried and told appellant that it hurt. At one point, appellant "pistol-whipped [A.K.] on the side of [her] head," causing her ear to bleed. As appellant was "ransacking through [her] drawers . . . looking for whatever he could find that was valuable," A.K. "went for the door."

A.K. called out to a man walking his dog outside the motel. The man, David Smith, observed A.K. "on the ground struggling" with appellant and "screaming 'help'" as appellant was "kicking her, trying to get away from her or something."[2] Appellant stepped over A.K., ran down the stairs, pointed his gun at Smith, and told him to "get out of the way." Appellant got into his car and drove away.

---

[2] Smith testified at the preliminary hearing but died before trial. His preliminary hearing testimony was read into the record at trial.

A.K. immediately called the police. The responding officer described A.K. as "very emotional" and "scared" and noted that she had blood on her shirt and "blood coming from her face, [from] the ear." The officer contacted a detective and arranged for A.K. to be transported to the hospital. A.K.'s grandmother, Cheryle Watson, met her there and saw that A.K. was "frantic" and "crying." Watson also noticed that A.K. was bleeding and had a cut on her ear. A.K. told Watson that she had been "raped and beaten with a pistol and robbed." During their hour-and-a-half stay at the hospital, Watson observed A.K. become "really angry" and then "shut down" and "[not] want to talk." A.K. received treatment for her ear and also met briefly with Detective Jennifer MacArthur Evans of the Virginia Beach police department's special victims' unit.

Following A.K.'s discharge, Watson took her to a forensic clinic where a sexual assault nurse examination ("SANE") was conducted by Kelly McGuinness. McGuinness observed "dried rust brown stains" on A.K.'s t-shirt. She noted A.K.'s swollen and bleeding left ear, an abrasion on her right knee, and bruising on her right jaw, left arm, left thigh, and both knees. A.K. also sustained "significant" genital injuries, including eight distinct lacerations that McGuinness "immediately" observed upon her examination. A.K. described the pain from these injuries as "ten out of ten." McGuinness, who testified as an expert witness, opined that the lacerations were "less than twenty-four hours old" and A.K.'s exterior injuries were caused by "blunt force trauma."

During her internal vaginal examination of A.K., McGuinness removed a "plastic latex-like piece of foreign body," later identified as a "piece of possible condom." A.K. declined an internal anal-rectal exam but reported pain. McGuinness did not observe any obvious swelling or tearing in A.K.'s perianal or anal area. McGuinness testified that during the exam, A.K. was calm and cooperative, alert and oriented, and that she reported no memory loss.

Seminal fluid was collected and, along with the foreign material removed during the internal exam, underwent forensic analysis. A DNA match was made to appellant, and at trial, appellant stipulated that his DNA was present in this physical evidence.

The next day, February 2, 2015, Detective Evans interviewed A.K. at the police station in a videotaped session. The videotape included a follow-up interview with McGuinness and showed A.K. talking on her cell phone.

At trial, appellant attempted to introduce the entire videotape as impeachment evidence to demonstrate the difference between A.K.'s demeanor at trial, where she was upset and crying, and her "prior inconsistent demeanor" during the interview. The court sustained the Commonwealth's hearsay objection but allowed appellant to elicit testimony from Detective Evans concerning A.K.'s demeanor during the videotaped interview. Detective Evans testified that during the interview, A.K. appeared "calm," did not cry, and in fact "laughed a couple of times." In closing argument, appellant's counsel referred to A.K.'s casual demeanor the day after the crime and contrasted it with her affect on the witness stand.

Appellant presented evidence from his cousin, Elijah Nottingham, and the mother of his children, Sophia Algahim, both of whom testified that in unrecorded phone calls, A.K. warned them that appellant owed her money and if the family did not pay her, she would proceed with criminal charges. According to Algahim, A.K. directed them "to get some money together and put it in my hand because, if not, I'm going to make sure that [appellant] rots in jail."

Appellant also testified. He stated that although he had agreed to pay A.K. two hundred dollars for sex, he brought only twenty or thirty dollars to the motel. He testified that he and A.K. had consensual oral, vaginal, and anal sex, and she never protested or indicated that she was unwilling. Appellant testified that although he initially told the police that he was unarmed, he had been carrying a gun to protect himself against "pimps or employers." He claimed that he kept the

- 4 -

gun in his jacket pocket while he and A.K. had sex; he denied brandishing the gun at A.K. or hitting her with it. Appellant also both denied and "did not recall" punching A.K.

According to appellant, he and A.K. had an "altercation" when he did not pay her, and she tried to prevent him from leaving without paying. He stated that his gun "fell out of [his] pocket" during the struggle. Appellant explained that he threatened Smith with the gun as he ran for his car because he thought Smith "was with" A.K.

At the conclusion of the evidence, appellant objected to the Commonwealth's proposed Jury Instruction 32. The instruction stated, "The [c]ourt instructs the jury that a conviction for rape or a conviction for forcible sodomy may be supported solely upon the testimony of the victim without further corroboration, if believed." The court overruled the objection and granted Jury Instruction 32.

After the jury convicted appellant, the court denied his motion to set aside the verdict and imposed an aggregate sentence of thirty years in prison with no time suspended.

ANALYSIS

A. Granting of Jury Instruction 32

An appellate court "review[s] jury instructions to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Watson v. Commonwealth, 298 Va. 197, 207 (2019) (alteration in original) (quoting Payne v. Commonwealth, 292 Va. 855, 869 (2016)). An instruction must be supported by "more than a scintilla" of evidence, Turman v. Commonwealth, 276 Va. 558, 564 (2008) (quoting Porter v. Commonwealth, 276 Va. 203, 241 (2008)), viewed in the light most favorable to the proponent, see Craig v. Commonwealth, 34 Va. App. 155, 164-65 (2000). "Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" Hilton v. Commonwealth, 293 Va. 293, 302 (2017) (alteration in original) (quoting Cooper v. Commonwealth, 277 Va. 377, 381 (2009)). "However, this Court

reviews *de novo* whether an instruction 'accurately states the relevant law.'" Ducharme v. Commonwealth, 70 Va. App. 668, 674 (2019) (quoting Sarafin v. Commonwealth, 288 Va. 320, 325 (2014)).

Appellant first contends that Jury Instruction 32, based on Fisher v. Commonwealth, 228 Va. 296 (1984), misstates the law. In Fisher, the Supreme Court affirmed convictions for sodomy and attempted rape based primarily on the ten-year-old victim's testimony and invoked the well-established rule of law that "[a] rape conviction may be sustained solely upon the testimony of the victim. There is no requirement of corroboration." 228 Va. at 299 (citing Snyder v. Commonwealth, 220 Va. 792, 796 (1980); Poindexter v. Commonwealth, 213 Va. 212, 217 (1972)). Appellant argues that this language in Fisher only applies on appeal when the evidence is considered in the light most favorable to the Commonwealth.

However, in its statement of the law, the Supreme Court focused on the evidentiary concerns for the finder of fact at trial. See id. Specifically, the Court noted that, due to the "clandestine nature" of sexual offenses, "[t]here are seldom any witnesses . . . except the perpetrator and the victim." Id. Therefore, "[a] requirement of corroboration would cause most sex offenses to go unpunished." Id. The Supreme Court thus concluded that "the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." Id. Accord Wilson v. Commonwealth, 46 Va. App. 73, 87-88 (2005).

Fisher does not limit its statement of law to appellate review of convictions for sexual offenses when the evidence is considered in the light most favorable to the Commonwealth. Likewise, nothing in the instruction itself required the jury to consider A.K.'s testimony in the light most favorable to the Commonwealth; it merely stated her testimony was sufficient "if believed." See Fisher, 228 Va. at 299; Snyder, 220 Va. at 796; Poindexter, 213 Va. at 217; Wilson, 46

- 6 -

Va. App. at 87-88.  Accordingly, Jury Instruction 32 accurately stated the relevant law regarding the quantum of proof sufficient for the trier of fact to convict.  See Ducharme, 70 Va. App. at 674.

Appellant also argues that Jury Instruction 32 duplicated Jury Instruction 2, the Virginia model instruction concerning the jury's function in assessing witness credibility.  See Model Jury Instrs.—Crim. No. 2.500; see also Barker v. Commonwealth, 230 Va. 370, 373 (1985) ("[T]he credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of a jury.").  In approving the refusal of an instruction that was "redundant and inappropriate," we stated that "[i]t is not desirable to multiply instructions."  Johnson v. Commonwealth, 2 Va. App. 447, 457 (1986) (quoting Ambrose v. Commonwealth, 128 Va. 763, 766 (1921)) (determining that an instruction derived from United States v. Telfaire, 469 F.2d 552 (D.C. Cir. 1972), that listed factors for assessing a witness' identification testimony was adequately covered by other instructions).  However, Jury Instruction 32 did not duplicate any of the other instructions given by the court.  No other instruction advised the jury that it could convict appellant based solely on A.K.'s uncorroborated testimony, if credible.

Appellant further contends that Jury Instruction 32 placed undue emphasis on A.K.'s testimony.  We disagree.  Nothing in the wording of the instruction signaled that A.K.'s testimony was more credible than that of any other witness or limited the jury's consideration of other evidence.  An instruction that refers to specific evidence does not automatically amount to an improper emphasis, as long as the instruction does not suggest that the specific evidence compels a particular finding.  See Edmondson v. Commonwealth, 248 Va. 388, 389-91 (1994) (approving a jury instruction that use of a false name after the commission of a crime could be considered as evidence of guilt and rejecting a defendant's argument that such instruction "improperly highlighted this single piece of evidence"); cf. Payne, 292 Va. at 871 (affirming the refusal of an instruction that "would have focused the jury's attention on four enumerated factors [for assessing eyewitness

credibility], thereby suggesting that those four factors were exclusive or at least entitled to special consideration or undue weight"). Jury Instruction 32 did not invade the fact-finding province of a jury by compelling a particular finding; instead, it reflected the well-established rule of law that a victim's testimony, if believed, is sufficient to convict.

Here, the uncontradicted evidence established that appellant and A.K. engaged in sex acts. The issue of consent required the jury to weigh A.K.'s credibility against appellant's. Because Jury Instruction 32 correctly stated the law applicable to this issue and was supported by the evidence, the court did not err in granting the instruction. See Watson, 298 Va. at 207.

## B. Exclusion of the videotaped interview

Appellant contends that the court abused its discretion by not allowing him to introduce A.K.'s videotaped interview with Detective Evans from February 2, 2015, the day after the incident. He argues the videotape was admissible under Virginia Rule of Evidence 2:607(a)(viii), which provides that a witness may be impeached by "any other evidence which is probative on the issue of credibility[.]" Specifically, appellant asserts that the videotaped interview, in which A.K. was laughing and appeared relaxed, reflects a "prior inconsistent demeanor" compared to her affect at trial when she "became quite emotional during her testimony."

It is well-settled that "[d]ecisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Blankenship v. Commonwealth, 69 Va. App. 692, 697 (2019) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753 (2005)). However, a trial court "by definition abuses its discretion when it makes an error of law." Robinson v. Commonwealth, 68 Va. App. 602, 606 (2018) (quoting Dean v. Commonwealth, 61 Va. App. 209, 213 (2012)). Accordingly, "evidentiary

- 8 -

issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" Abney v. Commonwealth, 51 Va. App. 337, 345 (2008) (quoting Michels, 47 Va. App. at 465).

Assuming without deciding that evidence of a witness' prior inconsistent demeanor may be admissible, in some circumstances, as "any other evidence which is probative on the issue of credibility" under Rule 2:607(a)(viii), we find that the court did not abuse its discretion by excluding the videotape in this case.[3] For discretionary decisions, "the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13 (2013) (alteration in original) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011)). Here, although the court excluded the videotape, it permitted appellant to question Detective Evans concerning A.K.'s demeanor during the interview and, in closing argument, to contrast it with her demeanor on the witness stand. Therefore, the court's ruling did not preclude appellant from challenging A.K.'s credibility through prior demeanor evidence.

Additionally, appellant sought to introduce the entire videotape, which included footage of A.K. interacting with the SANE nurse and talking on her cell phone. Appellant made no effort to redact irrelevant or inadmissible hearsay material from the recording. The court's ruling enabled appellant to present evidence of A.K.'s prior demeanor to the jury while preventing admission of other inadmissible evidence included within the full videotape. Because this decision was within the court's permissible "range of choice," we will not disturb it on appeal. See Lawlor, 285 Va. at 212-13. Based on our review of the record, we cannot say the court's ruling was an abuse of discretion and therefore affirm the court's exclusion of the videotape.

---

[3] Given our ruling that the court did not abuse its discretion by excluding the videotape, we do not address whether the evidence of a witness' "prior inconsistent demeanor" is inadmissible under Virginia Rule of Evidence 2:608(b)(1), which precludes introduction of "specific instances of the conduct of a witness . . . to attack or support credibility."

CONCLUSION

We hold that the court did not abuse its discretion in granting Jury Instruction 32, as it was an accurate statement of the law, was not duplicative of other instructions, and addressed a relevant issue raised by the evidence. Further, the court did not abuse its discretion in excluding A.K.'s videotaped interview and instead allowing the detective to testify about A.K.'s demeanor. Accordingly, we affirm appellant's convictions.

Affirmed.