# Richmond

JAMES C. HAMMER V. COMMONWEALTH OF VIRGINIA.

June 13, 1966.

Record No. 6155.

Present, All the Justices.

*Harry J. Kostel* and *Herbert H. Bateman* (*Jones, Blechman, Woltz & Kelly*, on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

GORDON, J., delivered the opinion of the court.

This is the second of four companion cases decided today, styled *Hammer* v. *Commonwealth*.

Hammer was charged in this case with attempted rape of a sixteen-year-old girl in the city of Newport News on April 16, 1964. He pleaded not guilty and waived a jury upon advice of court-appointed counsel. The trial judge found Hammer guilty and sentenced him to a term of thirty years. He appeals from his conviction on several grounds.

The more troublesome questions raised on this appeal have been answered in the opinion in the first companion case. *Hammer* v. *Commonwealth* (Record No. 6154), 207 Va. 135, 148 S.E. 2d 878. Defense counsel and the attorney for the Commonwealth, with the concurrence of the trial judge, stipulated that the evidence, rulings, objections and exceptions relating to those questions, as set forth in the transcript of the first companion case, should be applicable to this case.

Hammer gave an incriminating statement respecting this case to lieutenant F. L. Martin of the Newport News police force at 10:10 a.m. on May 14, 1964. The judge admitted this statement as evidence against him at his trial. We hold, for reasons set forth in the opinion in the first companion case, that the statement was improperly admitted because of the uncontradicted evidence concerning a threat made by chief Peach of the Newport News police force.

We reject the arguments that we should hold Hammer's incriminating statement inadmissible on other grounds, and that he was deprived of his constitutional rights because he had no preliminary hearing or because he did not receive copies of the warrants issued against him. Again, the reasons are set forth in the opinion in the first companion case.

Only two issues remain. First, Hammer's counsel argue we should enter final judgment dismissing the charge against him in this case. They say that without the incriminating statement the evidence was insufficient to prove guilt beyond a reasonable doubt.

Secondly, they argue that the trial judge improperly refused to admit certain evidence.

The sixteen-year-old prosecutrix was "baby-sitting" at a home in the Hilton Village section of Newport News on the night of April 16, 1964. Between 9:30 and 10:00, an intruder entered the home by opening the front door. "He had on a dark blue hooded sweatshirt and a handkerchief across his face and—tennis shoes and dark pants." He held a gun in his hand, and "[H]e . . . told me [the prosecutrix] just to do what he told me to do and I wouldn't get hurt." The prosecutrix said she did what the intruder told her to do, while he was in the home that night, because she was "afraid"; "[b]ecause he had a gun".

At the intruder's direction, the prosecutrix went into the laundry room. He told her to take off her slacks and pants and to lie on the floor. He opened the zipper on his trousers and lay on top of her. The prosecutrix said he began to penetrate her; "I don't know how much he did".

Then, the prosecutrix testified, "it sounded like the front door was opening and I said it was probably the people coming home so he jumped up real quick and—and he—he went out the back door." Shortly thereafter, he entered the home again, went into the laundry room, picked up his gun and departed.

The prosecutrix "thought the people [for whom she was 'baby-sitting'] would be there soon so I just waited for a while and then—they weren't there by eleven and I was scared and I called my mother and asked her to come down". After her mother came, the police were called and the prosecutrix was taken to the hospital for an examination.

The prosecutrix saw the assailant again at about 5:00 p.m. on May 12, 1964. The prosecutrix said he was walking along a street in Hilton Village and "he had on the same dark sweatshirt and tennis shoes and—trousers", when she recognized him.

Hammer was arrested that night, as described in the opinion in the first companion case. The prosecutrix was brought to police headquarters after his arrest, and she identified him as the person who had assailed her on the night of April 16. Hammer "had on his outfit, the blue hooded sweatshirt and something across his face and dark trousers and tennis shoes". The officer standing beside him was also dressed in a sweatshirt (but his other clothing is not disclosed by the testimony), and he apparently had a handkerchief

across his face also. When the prosecutrix was asked whether it would have been as easy for her to identify Hammer as the assailant if he hadn't been dressed in that manner, she answered "Yes".

The prosecutrix testified positively that Hammer was the person who entered the home where she was "baby-sitting" on the night of April 16 and assailed her. Hammer denied on the witness stand that he had entered the home and assailed the prosecutrix.

A conviction of rape can be based upon the uncorroborated testimony of a prosecutrix. *Robinson* v. *Commonwealth*, 197 Va. 754, 91 S.E.2d 396 (1956). Hammer's counsel recognize of course that this rule applies equally to a charge of attempted rape. They argue, however, that the prosecutrix' testimony about what happened on the night of April 16 was, as a matter of law, incredible because it bore "the impress of falsehood on its face". Counsel rely on *Harvey* v. *Commonwealth*, 103 Va. 850, 49 S.E. 481 (1905), where we held the prosecutrix' testimony inherently incredible.

But *Harvey* is clearly distinguishable on its facts. The prosecutrix in that case said that she was assailed under quite different circumstances from those testified to by the prosecutrix in this case. Furthermore, the prosecutrix in *Harvey* gave no report of the alleged rape until she gave birth to a child approximately nine months later.

Hammer's counsel argue that the testimony of the prosecutrix in this case was incredible because she failed to report the incident before 11:00 on the night of April 16. But the prosecutrix' testimony is not incredible as a matter of law because of this delay in reporting the incident. It was the function of the trial judge, who heard the evidence without a jury, to determine the credibility of the prosecutrix' testimony. He was entitled to give such weight as he deemed proper to her failure to report the incident before 11:00 p.m. and to her explanation why she did not report it earlier.

Hammer's counsel rely also upon *Gillispie* v. *Commonwealth*, 180 Va. 300, 23 S.E.2d 146 (1942). The prosecutrix in that case said the accused came up behind her and caught her by the shoulder while she was walking home from work. She called him by name and told him to leave her alone and, when she turned around, she saw he had a handkerchief across his face. The prosecutrix screamed once, and the accused ran. We found the testimony in that case "bare of any threats of violence, any indecent language, any base proposals" and not indicative of any "sordid or unlawful purpose". 180 Va. at 302, 23 S.E. 2d at 147.

This case is unlike *Gillispie* v. *Commonwealth, supra.* Here, the prosecutrix' evidence shows that Hammer made threats of violence and a base proposal. Moreover, it shows that Hammer attempted to carry out his unlawful purpose, rape.

Counsel argue that the prosecutrix' evidence suggested "nothing more than . . . voluntary submission . . . to the desire . . . of the intruder to engage in . . . sexual intercourse". They say that voluntary submission is indicated by her failure to make an outcry, by the "absence of a marked change in the prosecutrix' emotional state" after the incident, and by the absence of physical evidence, when she was examined by a doctor on the night of April 16, that she had been violated or injured.

Nevertheless, the evidence amply supports a finding that the prosecutrix did not submit voluntarily, but followed the assailant's directions against her will. He had a gun, and she said she submitted without making any outcry because she was afraid. The fact that the examining physician found no physical evidence to corroborate a penetration is not significant; Hammer was convicted of attempted rape. Moreover, the prosecutrix' testimony shows that Hammer did not complete his purpose, and the absence of physical evidence was not necessarily inconsistent with her testimony about what transpired. In arguing that the prosecutrix' emotional state was not markedly changed after the encounter on the night of April 16, counsel overlook evidence in the record to the effect that she was emotionally upset.

■ Finally on the issue of the sufficiency of the evidence, counsel argue that the evidence "fails as a matter of law to show that the prosecutrix was able to identify the intruder with any degree of certainty". They point to the prosecutrix' inexact estimates of the assailant's age and height, when she described him to the investigating officer on the night of April 16, and her error in describing the assailant's headpiece as a "button-type golf hat". They point also to the manner in which the "line-up" was arranged on the night of May 12, particularly the fact that Hammer was in the same dress as at the time of his arrest. These bits of evidence went to the credibility of the prosecutrix' testimony. It was the province of the trial judge, who was the trier of fact, to determine what weight should be given to the prosecutrix' testimony in the light of all the evidence presented in the case. Here again counsels' arguments have been foreclosed by the verdict of the trial judge.

We hold that the evidence, exclusive of Hammer's incriminating statement, was sufficient to sustain his conviction.

We now turn to the complaint that the trial judge improperly refused to permit the prosecutrix' mother to answer a question put to her by Hammer's counsel. On cross-examination, the prosecutrix was asked:

"Well, do you deny that you told the Police Officer—that you told the detective on April 18, 1964, 4:30 p.m., that you could not identify the person who came into 210 Ferguson Avenue on April 16, 1964?"

She answered:

"I told him that I didn't know who he was but if I saw him again I probably would."

Defense counsel attempted to impeach the prosecutrix' testimony by asking the prosecutrix' mother this question:

"Isn't it true that—in your presence your daughter mentioned to the detective that she was—would be unable to identify or could not identify the man who had come into the home on April 16th?"

Counsel urge that an answer should have been permitted for the purpose of contradicting the prosecutrix' testimony. But even if the prosecutrix' mother had answered "yes" to this question, her answer would not have contradicted the prosecutrix' testimony. The trial judge was therefore correct in sustaining the objection.

The judgment is reversed and the case remanded for a new trial because Hammer's incriminating statement was admitted in evidence despite the uncontradicted evidence concerning a threat made by chief Peach.

*Reversed and remanded.*

EGGLESTON, C. J., and I'ANSON, J., concur in result.

SPRATLEY, J., concurs in result for reasons set forth in a separate opinion.

CARRICO, J., dissents for reasons set forth in a separate opinion.

CARRICO, J., dissenting.

I dissent for the reasons assigned in my dissenting opinion in Record No. 6154.