COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Friedman and Callins
Argued at Salem, Virginia

GEORGE LOUIS HENRY, IV

                                               MEMORANDUM OPINION BY*

v.      Record No. 0531-21-3               JUDGE DOMINIQUE A. CALLINS
                                                   MAY 10, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

George Louis Henry, IV appeals his convictions, following a bench trial, of robbery, use of

a firearm in the commission of a felony, and misdemeanor obtaining money by false pretenses, in

violation of Code §§ 18.2-58, 18.2-53.1, and 18.2-178. Henry contends that the evidence is

insufficient to support his convictions. Henry further contends that because the convictions should

be reversed and dismissed, the trial court erred when it revoked his previously suspended sentences

based on the new convictions. Because we find no error on the part of the trial court, we affirm the

judgment below.

I. BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On August 13, 2020, Lindsey Singleton stayed at the home of his cousin at the South Hills Apartments in Danville, Virginia. While Singleton and a friend were outside, Henry approached them to ask for a cigarette. After the friend gave him one, Henry left. Minutes later, Henry returned and "pulled a gun up from behind his pocket and put it to [Singleton's] head." Henry demanded Singleton remove his neck chain "or [Henry] was [going to] kill" him. Singleton testified that he had recently bought the chain and that it was worth two thousand dollars. Singleton, fearing for his life, began to remove the chain when it "got hung up around [his] neck." Suddenly, Henry "snatched it," breaking the clasp of the chain, and ran off.

Singleton testified that the next day, his wife went to Riverside Pawn, a nearby pawnshop, to look for the stolen chain. According to Singleton, his wife described the chain to the pawnshop employee, who showed her a chain matching her description. Singleton also went to the pawnshop. He identified the chain as the one that Henry had stolen the night before, noting its broken clasp. After confirming the location of the chain, on August 14, 2020, Singleton reported it stolen. When asked why he delayed reporting the chain stolen, Singleton explained that he wanted to locate the chain before contacting the police. On cross-examination, Singleton denied that he was buying drugs from Henry, had any illicit drugs on his person, or was under the influence of illicit drugs on August 13, 2020.

On August 14, 2020, Megan Brooks was working at Riverside Pawn and handled the sale of a "very big, thick chain, [with] a big charm" and a broken clasp. Brooks testified that Henry, together with another man, entered the shop with the chain. Henry explained that he wanted to sell

the chain, but he did not have any identification. Henry's companion transacted the sale under his name, and Brooks tested the chain "to make sure that it [was] real." Because Brooks determined the value of the chain exceeded five hundred dollars, she consulted her manager for approval of the purchase. After receiving the requisite approval, Brooks offered six hundred dollars in exchange for the chain. Henry took the money, and then the men left the pawnshop.

Brooks testified that Riverside Pawn is equipped with a video recording device. The Commonwealth played a video of the transaction Brooks described. The video shows that Henry was the man who produced the chain.

Upon the conclusion of the Commonwealth's evidence, Henry moved to strike, arguing that the Commonwealth failed to make a *prima facia* case. The trial court overruled the motion.

Henry then testified that on the morning of August 13 he "went outside looking to buy a cigar from somebody in the apartment complex." He encountered Singleton and his friend and asked them for a cigar. The men indicated that they did not have one, but offered to drive Henry to the store to get one. According to Henry, during the drive Singleton asked Henry about purchasing marijuana. Henry arranged for a marijuana dealer to meet them at the store and obtained twenty dollars from Singleton for the purchase.

As the trio drove back to the apartment complex, Singleton asked Henry if he knew where to get "dog food," which Henry understood to mean heroin. Henry told Singleton it would cost eighty dollars for a half gram and that he "had somebody on the way to bring [him] some anyway"; "when [Henry] got it, [he would] come to talk to [Singleton]." Once the trio arrived back at North Hills Court, Henry left Singleton and his friend. Later, Henry rejoined the two men, asking Singleton's friend for a cigarette. Singleton then asked about the heroin, prompting Henry to go "back in" until he received the heroin delivery. After Henry obtained the heroin, he presented some to Singleton. Henry testified that instead of paying the agreed upon eighty dollars, Singleton asked

Henry to credit him the money. When Henry refused, Singleton pulled the neck chain from his pocket and told Henry that it "cost a little more than eighty dollars." Singleton suggested that Henry hold on to the chain as collateral until Singleton could repay Henry. Henry testified that he told Singleton if he took the chain, he would go to Riverside Pawn to sell it. Upon Singleton's agreement, Henry "snatched" the chain from Singleton's hand.

Henry admitted that "[r]ight afterwards," he and another individual went to the pawnshop and sold the chain for six hundred dollars, using the other individual's identification to complete the transaction. Henry denied having a gun when he interacted with Singleton.

On cross-examination, Henry admitted that he first told police that someone else had the chain and that he was helping that individual pawn it. Henry also admitted he later changed his story and told the police he dropped three hundred dollars in Singleton's car and approached Singleton later at North Hills Court demanding the money; when Singleton said he did not have it, Henry took his chain.

After the defense rested its case, Henry renewed his motion to strike, urging the trial court to accept his version of the events and to reject Singleton's testimony. The trial court rejected Henry's argument and credited Singleton's testimony. It found Henry guilty of robbery, use of a firearm in commission of a felony, and obtaining money by false pretenses. It acquitted Henry of the charge of possession of a firearm by a convicted felon.

At the sentencing hearing, the trial court also addressed the show cause order it had issued Henry based on his new convictions. The court took judicial notice of the prior sentencing order and the prior revocation order for Henry's 2015 charges as well as to the conviction order for the most recent charges.

For the second time, Henry renewed his motion to strike, arguing against the sufficiency of the evidence, and further, that his previously suspended sentences should not be revoked based on

the most recent convictions.  The trial court rejected Henry's argument and again denied the motion to strike.  It sentenced Henry to twenty years' imprisonment for robbery, the mandatory minimum three years' imprisonment for use of a firearm, and twelve months in jail for obtaining money by false pretenses.  The trial court suspended ten years and eight months of the robbery sentence, and all twelve months of the sentence for obtaining money by false pretenses.  Henry was also required to pay six hundred dollars in restitution to Riverside Pawn Company.  The trial court also revoked all eleven years, twelve months, and twenty-three days of Henry's previously suspended sentences, and re-suspended eight years.  That sentence was to run consecutively with the sentences imposed for the new convictions.  This appeal followed.

## II.  ANALYSIS

Henry contends that the evidence was insufficient to convict him of robbery, use of a firearm, and obtaining money by false pretenses.  Essentially, his sufficiency contention hinges on two arguments: (1) that the trial court should have believed his version of the events because Henry implicated himself as a drug dealer, and (2) that the Commonwealth failed to prove he acted with the requisite intent, because he admitted under oath an intention to commit drug crimes as opposed to theft and firearm-related crimes.

### A.  The trial court did not have to believe Henry's testimony above the Commonwealth's evidence.

"The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts."  *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Taylor v. Commonwealth*, 256 Va. 514, 518 (1998)).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).  "In

- 5 -

conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

Henry asserts that the Commonwealth's evidence is inherently incredible because his version of events implicates him in other, different criminal acts. Also, because Singleton waited until the next day to report the robbery, Henry insists that Singleton's version of events cannot be credible.

We have held that "[w]itness testimony will not be found inherently incredible 'unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."'" *Hammer v. Commonwealth*, 74 Va. App. 225, ___ (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). The record does not support a showing of manifest falseness to warrant Henry's assertion of inherent incredibility. Instead, the trial court confronted two contrary versions of events, one of which implicated Henry in a single criminal act and one of which implicated him in several, lesser criminal acts, though none for which he was charged. Further, the trial court had before it the fact that Henry's trial testimony presented the most recent of three different versions Henry had offered. Credibility is not measured by an individual's willingness to offer alternative options for culpability. Nor is a court obligated to find a witness's testimony incredible as a matter of law due to the witness's delay in reporting the crime. *See Hammer v. Commonwealth*, 207 Va. 159, 162 (1966) (holding that a trial judge "was entitled to give such weight as he deemed proper" to a rape victim's delay in reporting her rape). As it was so entitled, the trial court rejected Henry's version and accepted Singleton's testimony as credible. The

record supports the trial court's credibility determination, and we will not disturb this determination on appeal.

### B. A fact finder can infer from Henry's actions an intent to steal.

Henry also contends that the evidence was insufficient to convict him of robbery. He argues that although all the elements of robbery are technically present, the Commonwealth still failed to establish his felonious intent to rob Singleton. In support of this position, Henry relies on *Jones v. Commonwealth*, 172 Va. 615 (1936), in which the Virginia Supreme Court reversed the appellant's robbery conviction because it held that the appellant merely tried to protect a relative when he took a pistol from a police officer and ran away. Henry urges against "a blind adherence to strict technical rules," *id.* at 621, arguing that here the trial court should have had "reasonable doubt as to whether the *actus reus* coincided with the particular *mens rea* required by the charged offense."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)) (alteration in original). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Robbery is the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Anderson v.*

*Commonwealth*, 52 Va. App. 501, 506 (2008) (quoting *Jay v. Commonwealth*, 275 Va. 510, 524 (2008)). The intent to steal "is an intent to feloniously deprive the owner permanently of his property." *Pierce v. Commonwealth*, 205 Va. 528, 533 (1964). This intent "may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him." *Carter v. Commonwealth*, 280 Va. 100, 105 (2010) (quoting *Stanley v. Webber*, 260 Va. 90, 96 (2000)).

"In the absence of vocal expressions evidencing intention, we must look to actions and surrounding incidents." *Jones*, 172 Va. at 620. Here, the trial court found that after receiving a cigarette from Singleton's friend and walking away, Henry returned and pulled what looked like a gun out of his pocket. He placed the object against Singleton's head and demanded Singleton's neck chain while threatening to kill him. As Singleton took the chain off, Henry snatched it, breaking the clasp. The trial court accepted Singleton's testimony that Henry took the chain against his will while threatening to kill him. By his own admission, Henry then almost immediately went to a nearby pawnshop and sold the chain for six hundred dollars. Thus, Henry permanently deprived Singleton of the chain through force. "The ancient maxim, '[a]ctions speak louder than words,' has been so often applied in the determination of judicial questions as to become a canon of the law." *Id*. Henry's actions communicated an intent to effect the foreseeable consequences thereof. The evidence is sufficient for any rational trier of fact to conclude that Henry intended to permanently deprive Singleton of the chain. Thus, we will not disturb the trial court's finding on appeal.

### C. The trial court did not err in revoking Henry's suspended sentences.

Because we hold that the record supports the trial court's finding that the evidence was sufficient to convict Henry, and the trial court's revocation of Henry's suspended sentences was based on those convictions, we necessarily hold that the trial court did not err in its judgment.

## III. CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*