COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and AtLee
Argued at Fredericksburg, Virginia


MICHAEL JASON DREXEL
                                                           OPINION BY
v.        Record No. 1805-22-4            CHIEF JUDGE MARLA GRAFF DECKER
                                                           MAY 7, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge[1]

Meghan Shapiro, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Katherine Q. Adelfio, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Francis A. Frio, Senior Assistant
Attorney General, on brief), for appellee.


Michael Jason Drexel appeals his conviction for threatening to damage a building in

violation of Code § 18.2-83. He presents six assignments of error challenging the admission of

evidence, jury instructions, the sufficiency of the evidence, and his sentence.

This appeal requires us to consider the threat and mens rea components of Code

§ 18.2-83. We hold that *Counterman v. Colorado*, 143 S. Ct. 2106, 2114-17 (2023), establishes

that, for purposes of the First Amendment of the Constitution of the United States, there is a

distinction between a "true threat" and the speaker's intent. The First Amendment requires a

communication to be a "true threat" in order to be punishable in addition to requiring that the

speaker acted with some subjective intent. We also hold that a conviction under Code § 18.2-83

does not require a showing of malice. Based on this interpretation of the First Amendment and

---

[1] Judge Kathleen M. Uston ruled on the pre-trial motion *in limine* to exclude evidence.

Code § 18.2-83, Drexel's challenges to the admission of certain evidence and the rejection of his proposed jury instructions on "true threats" and malice must fail. We further conclude that the trial court did not err by urging the jury to continue deliberations after it expressed difficulty reaching a unanimous decision. In addition, we hold the evidence was sufficient to support the conviction. Finally, we do not reach the merits of Drexel's challenge to his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because any error in not submitting the question of his age to the jury was harmless beyond a reasonable doubt. For these reasons, we affirm the conviction.

BACKGROUND[2]

In early 2021, Drexel was undergoing therapy with Amanda Gill. On March 8, 2021, he telephoned Gill and complained about the IRS. Drexel was angry and made some "homicidal statements" but did not express an intent to act on them. He agreed to call Gill again if his violent thoughts intensified.

Drexel called Gill again later that day. When the two spoke, Drexel was angrier, "persistently repeat[ed] lots of homicidal" thoughts, and told her that he was "ready to act on these plans." At that time, he agreed to call her if he needed her to be his "safe person."

In the early evening, the two spoke a third time. Drexel sounded more agitated than earlier and spoke very quickly. During that conversation, he "had some very specific ideas and

---

[2] On appeal of challenges to the admissibility of evidence, the sufficiency of the evidence to support a conviction, and constitutional issues, appellate courts view the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Davis*, 290 Va. 362, 368-69 (2015) (considering a constitutional question); *Hicks v. Commonwealth*, 71 Va. App. 255, 261 n.2 (2019) (reviewing the admissibility of evidence); *Peters v. Commonwealth*, 66 Va. App. 743, 745 n.1 (2016) (reviewing the sufficiency of the evidence). However, in reviewing a trial court's ruling on a proposed jury instruction, this Court "view[s] the evidence in the light most favorable" to the instruction's proponent, in this case Drexel. *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)). Consequently, this opinion sets out all of the evidence relevant to the issues before the Court.

plans for how to harm others." He expressed a desire to kill Alexandria law enforcement officers and bomb city hall. Drexel "adamantly repeat[ed] that he was going to act on these thoughts." Gill attempted to have Drexel evaluated by an emergency services clinician for possible hospitalization. She also contacted the Alexandria Police Department to warn them about Drexel.

Based on Gill's report, Detective Jason Marable and Officer David Smith of the Alexandria City Police Department telephoned Drexel. During that conversation, Drexel expressed frustration with the City of Alexandria Department of Taxation. He was angry about his wages being garnished. He told the officers that he would burn down city hall. Drexel also proclaimed that "he was going to be the next Timothy McVeigh" and "he wanted to send a message." He made other statements about killing law enforcement officers, judges, and judges' families. Detective Marable was "very concerned" because he believed that Drexel "meant" "the words he was saying."

The next morning, the officers obtained an emergency custody order to hospitalize Drexel for mental health purposes. Detective Marable and other officers located Drexel and attempted to take him into custody. Drexel refused to comply and ended the interaction by driving away.

Officers then obtained a criminal warrant and arrested Drexel for feloniously threatening to bomb, burn, or damage a place of assembly or building in violation of Code § 18.2-83. Officers also searched Drexel's SUV and found an icepick, a bag of tools, and a plastic bottle of gasoline.

A grand jury indicted Drexel for feloniously making threats to bomb, burn, or damage a place of assembly or building. At trial, the Commonwealth presented evidence of the statements Drexel made to Gill, as well as those made to Detective Marable and Officer Smith.[3]

Drexel sought to have the jury instructed on the constitutional definition of threat for purposes of safeguarding his First Amendment protections of his freedom of speech. He also asked the court to instruct the jury that malice was an element of the crime. The court declined to give these instructions.

On the second day of jury deliberations, after a total of about seven hours, the jury asked the court, "What do we do if we cannot come to a unanimous agreement? That is the stance of the jury at this time." Defense counsel suggested that the jury was "hung" and asked for a dismissal. Over the defense's objection, the court instructed the jurors generally to reconsider and try to come to a unanimous verdict. After further deliberations, the jury found Drexel guilty as charged in the indictment.

After the guilty verdict, Drexel filed a motion for misdemeanor sentencing or, in the alternative, to set aside the verdict. He argued that the evidence supported only a misdemeanor conviction because the jury did not make a finding regarding his age, a necessary element of the felony under the statute. The trial court denied the motion.

Drexel was sentenced to twelve months of incarceration, with all time suspended except time already served.

---

[3] Drexel's statements to the officers provided the basis for venue in this case. The statute provides that prosecution is proper "either in the jurisdiction from which the communication was made or in the jurisdiction where the communication was received." Code § 18.2-83(B). Gill was not in Alexandria, and she did not know Drexel's location when he spoke to her by phone. Gill's testimony about their conversations was admitted into evidence not to demonstrate venue but instead to provide relevant context.

ANALYSIS

Drexel raises six assignments of error related to his conviction for threatening to damage a building in violation of Code § 18.2-83. At its core, this appeal requires consideration of two elements of the offense: threat and mens rea. Therefore, we first address the foundational questions of what is required to prove each of these two elements. This analysis involves both statutory application and consideration of Drexel's argument that his conviction violates the constitutional protections of his freedom of speech.

## I. Code § 18.2-83: Threat and Mens Rea

Code § 18.2-83, in relevant part, prohibits a person from "mak[ing] and communicat[ing] to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building, or other structure." A conviction under Code § 18.2-83 requires proof both that the communication included a threat made by the defendant and that he acted with the necessary intent. *Howard v. Commonwealth*, 74 Va. App. 739, 756 (2022). We interpret these provisions in light of the freedom-of-speech protections provided by the First Amendment of the Constitution of the United States.[4] *See Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 380 (2014) (explaining that courts construe statutes to avoid constitutional conflict); *Turner v. Commonwealth*, 67 Va. App. 46, 56-57 (2016) (analyzing the proscription of Code § 18.2-423.2 on certain communications through the lens of the First Amendment); *Summerlin v.*

---

[4] Drexel also cites Article I, § 12, of the Constitution of Virginia in support of his argument. We do not automatically interpret the Virginia constitution as coextensive with the U.S. Constitution. *See Vlaming v. W. Point Sch. Bd.*, ___ Va. ___, ___ (Dec. 14, 2023); *McNally v. Va. Dep't of Motor Vehicles*, ___ Va. App. ___, ___ (Mar. 26, 2024). Generally, however, Virginia courts have applied the same interpretation to both Article I, § 12, and the free speech provisions of the federal First Amendment. *See, e.g.*, *Elliott v. Commonwealth*, 267 Va. 464, 473-74 (2004). Drexel does not suggest that Article I, § 12, provides more extensive rights in this context. Therefore, in considering his free speech claim, we rely on existing First Amendment law. *See, e.g.*, *Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019) (noting this Court does not make arguments on a party's behalf).

- 5 -

*Commonwealth*, 37 Va. App. 288, 295-97 (2002) (interpreting the mens rea standard of Code § 18.2-83). Defining these elements involves both statutory and constitutional interpretation, questions that we review de novo. *See Turner*, 67 Va. App. at 56.

## A. Threat

This Court has already defined the threat element of this offense. "[A] threat is 'a communication avowing an intent to injure another's person or property.'" *Howard*, 74 Va. App. at 756 (quoting *Perkins v. Commonwealth*, 12 Va. App. 7, 16 (1991)) (considering Code § 18.2-83); *see Summerlin*, 37 Va. App. at 297. To constitute a threat, the communication must also "reasonably cause the receiver to believe that the speaker will act according to his expression of intent." *Howard*, 74 Va. App. at 756; *Summerlin*, 37 Va. App. at 297 (quoting *Perkins*, 12 Va. App. at 16). Because Drexel argues that his conviction punished constitutionally protected free speech, we must consider the parameters of First Amendment protections of threatening communications.

The First Amendment protects the freedom of speech generally but does not protect "'[t]rue threats' of violence." *See Counterman*, 143 S. Ct. at 2113-14 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)); *see Turner*, 67 Va. App. at 57. "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow . . . ." *Counterman*, 143 S. Ct. at 2114 (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam)). "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id.* (alteration in original) (quoting *Black*, 538 U.S. at 359); *see Wise v. Commonwealth*, 49 Va. App. 344, 355 (2007). Whether a communication is a threat turns on "'what the statement conveys' to the person on the other end." *Counterman*, 143 S. Ct. at 2114 (quoting *Elonis v. United States*, 575 U.S. 723, 733 (2014)). In contrast, "[w]hether the speaker is aware of, and

- 6 -

intends to convey, the threatening aspect of the message is not part of what makes a statement a threat." *Id.* In other words, the speaker's intent is irrelevant to determining whether the communication constitutes a true threat under the First Amendment.

In short, for purposes of Code § 18.2-83, a threat is a communication conveying to a reasonable person a serious intent to "bomb, burn, destroy or in any manner damage" certain property, regardless of whether the actor subjectively intended to convey such a message. The intent of the person making the communication is a separate element.

### B. Mens Rea

"Proof that [the defendant] intended to make and communicate the threat" satisfies Code § 18.2-83's mens rea requirement. *See Howard*, 74 Va. App. at 756 (alteration in original) (quoting *Summerlin*, 37 Va. App. at 297). In addition, the First Amendment protections of free speech "requir[e] a subjective element." *Counterman*, 143 S. Ct. at 2112, 2116-17. For a threat to be punishable from a constitutional standpoint, at a minimum, the offender must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.* at 2112. "The speaker need not actually intend to carry out the threat." *Black*, 538 U.S. at 359-60; *see Summerlin*, 37 Va. App. at 297.

When examining the mens rea required by Code § 18.2-83, this Court has used the phrase "unlawful intent." *See, e.g.*, *Howard*, 74 Va. App. at 756 (quoting *Summerlin*, 37 Va. App. at 296). As employed in the cases analyzing the mens rea required under Code § 18.2-83, the phrase "unlawful intent" merely helps to define the term mens rea: "*mens rea* or *scienter* is simply the unlawful intent or design necessary to any criminal act that is not a strict liability defense.'" *See, e.g.*, *Saunders v. Commonwealth*, 31 Va. App. 321, 324 (2000) (analyzing the mens rea required for Code § 18.2-60(A)). In other words, as used in this context, the phrase "unlawful intent" does not define a specific level of mens rea but instead denotes the fact that

some level of intent is required to make a particular act criminally punishable. *See Eberhardt v. Commonwealth*, 74 Va. App. 23, 37-38 (2021) (noting that the mens rea, or "unlawful intent," required under Code § 40.1-103(A) includes both willfulness and criminal negligence).

Drexel argues that the level of mens rea required under Code § 18.2-83 is malice. "The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done 'wilfully or purposefully.'" *Essex v. Commonwealth*, 228 Va. 273, 280 (1984) (quoting *Williamson v. Commonwealth*, 180 Va. 277, 280 (1942)); *see also Saunders*, 31 Va. App. at 324 (defining malice as a "state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason" (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 344-45 n.1 (1998))).

In *Perkins v. Commonwealth*, 12 Va. App. 7, 15 (1991), this Court considered whether Code § 18.2-83 was unconstitutionally overbroad because the statutory language did not include a mens rea requirement. Holding that the statute was constitutional because it could be construed narrowly, this Court noted that "[o]nly an individual who maliciously 'makes and communicates . . . any threat'" would be punished under the statute. *Id.* (second alteration in original) (quoting Code § 18.2-83). Later, however, the Court clarified that this statement was dicta and that malice is *not an element* of the offense. *Summerlin*, 37 Va. App. at 296.

Drexel urges this Court to overturn or modify *Summerlin*, arguing that it incorrectly held that the language at issue in *Perkins* was dicta. We are unpersuaded by this argument.[5] Language used in an opinion that is not "essential to the Court's judgment . . . is unbinding dicta." *Sarafin v. Commonwealth*, 288 Va. 320, 329-30 (2014). The holding in *Perkins*, 12

---

[5] We note that under the interpanel accord doctrine, a panel of this Court is bound by other panel opinions of the Court. *See, e.g.*, *Hannon v. Commonwealth*, 68 Va. App. 87, 97 (2017).

- 8 -

Va. App. at 15, 17, was that Code § 18.2-83 was not facially unconstitutional. The Court interpreted the statute narrowly to include a mens rea requirement in order to avoid constitutional overbreadth. *Id.* at 16-17. But the Court's specific finding that malice was required—as opposed to some other mens rea—was not essential to the holding. *See id.* at 15. That statement in *Perkins* therefore qualifies as nonbinding dicta.

Drexel also argues that using a malice standard would be consistent with *Turner v. Commonwealth*, 67 Va. App. 46, 57, 60-61 (2016). In *Turner*, 67 Va. App. at 56, 64, this Court considered the constitutionality of Code § 18.2-423.2, which prohibits displaying nooses to communicate threats. That statute, however, includes express statutory language on intent, requiring that the perpetrator act "with the intent of intimidating any person or group of persons." Code § 18.2-423.2. For constitutional purposes, "[i]ntimidation . . . is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360. Put simply, *Turner* involved a different statute than the one here, and that statute expressly sets out the applicable intent requirement. Therefore, it is not controlling or persuasive in this case.

## II. Assignments of Error

With the definitions of these two elements, threat and mens rea, in mind, we turn to Drexel's particular assignments of error.

## A. Admissibility of Evidence

Drexel contends that the court erred by admitting into evidence his "statements that he would harm people, separate and apart from any threat to city buildings."

On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019). The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable

belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard*, 74 Va. App. at 753.

Drexel suggests that his statements that he would harm people were irrelevant and inadmissible bad-act evidence. He specifies four statements that he believes should have been excluded as separate from his statement that he would burn down city hall: (1) his "threats against law enforcement" generally, (2) his statement "that if any law enforcement officers approached him, or saw him, he was going to kill them," (3) his expressed desire "to dismember Judges and their families," and (4) his statement "that if he were to douse himself in gasoline, law enforcement would be unable to tase him because he could li[ght] on fire." He made these statements in a single phone call—his phone call with Detective Marable and Officer Smith. This was the same conversation in which he said he would burn down city hall.

Evidence that a defendant committed prior bad acts "is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity" with that trait. Va. R. Evid. 2:404(b). Even so, such evidence may be admissible for other purposes, such as if it tends to prove intent. *Id.*; *see, e.g.*, *Vera v. Commonwealth*, 77 Va. App. 271, 281 (2023) (noting that such evidence is admissible if it is "relevant to a material issue or element of consequence in the case" (quoting *Shifflett v. Commonwealth*, 29 Va. App. 521, 529 (1999))). "Virginia . . . 'follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting [other-crimes] evidence "if relevant[] for any purpose *other than* to show a mere propensity . . . .""" *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019) (quoting *Thomas v. Commonwealth,* 44 Va. App. 741, 757 n.8, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). Nevertheless, if the prosecution seeks to introduce evidence of a prior bad act for a

permissible purpose, for that evidence to be admissible, its "legitimate probative value must exceed its incidental prejudice to the defendant." *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)) (considering the admissibility of evidence of prior crimes); *see* Va. R. Evid. 2:404(b).[6]

At trial, the Commonwealth was required to prove that Drexel made a threat—that is, that a listener would reasonably have believed that Drexel intended to burn down city hall. In addition, the Commonwealth had to prove that he "intended to make and communicate the threat." *Howard*, 74 Va. App. at 756 (quoting *Summerlin*, 37 Va. App. at 297). The statements Drexel challenges were made in the same phone conversation in which he stated his intent to burn down city hall. Additionally, they were relevant to the context in which he stated his intent and desire to burn down city hall. *See generally Scott v. Commonwealth*, 228 Va. 519, 527 (1984) (noting that "other crimes" evidence is excluded only if it is "unrelated" to the current charges and "offered solely for the purpose of showing that the accused was a person of such character as to be a likely perpetrator of the offense charged"). This context pertained to whether a listener would take the statement seriously and whether Drexel had the requisite intent when making the statement. *See generally* Va. R. Evid. 2:401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.").

Having determined the legitimate purposes for admitting this evidence, we consider the balancing test for prejudice in the context of other bad acts. We hold that "the legitimate

---

[6] In applying the balancing test for prejudice of prior bad act evidence, we recognize that it is marginally stricter than the balancing test for prejudice used to evaluate the admission of relevant evidence generally. *Compare* Va. R. Evid. 2:404(b) (providing that other bad act evidence can be admitted only if "the legitimate probative value of such proof outweighs its incidental prejudice"), *with* Va. R. Evid. 2:403 (providing that evidence is not admissible generally if its probative value "is substantially outweighed by . . . the danger of unfair prejudice").

probative value of the" challenged statements "outweighed [their] incidental prejudice to" Drexel. *See Kenner*, 299 Va. at 427.

The similar statements made in a single conversation implicating violence against law enforcement, judges and judges' families, and himself, in support of his cause, are probative to the elements of threat and intent. Therefore, the trial court acted within its discretion by admitting evidence of Drexel's other statements intimating related acts of violence. *See Parnell v. Commonwealth*, 15 Va. App. 342, 348 (1992) (affirming the admission of a statement made by the defendant two days after he made the threat that constituted the offense because it was relevant to his earlier state of mind). *See generally Scott v. Commonwealth*, 228 Va. 519, 526 (1984) ("Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial.").

## B. Jury Instructions

Drexel argues that the court erred when instructing the jury on the definition of threat and the requisite mens rea. He also contends that the trial court abused its discretion by giving an "*Allen* charge" to the jury.

Whether to grant or deny a proffered instruction is reviewed on appeal for an abuse of discretion. *Commonwealth v. Richard*, 300 Va. 382, 389 (2021). At the same time, the appellate court reviews de novo "[w]hether a jury instruction accurately reflects the relevant law." *Lindsey v. Commonwealth*, 293 Va. 1, 5 (2017). "In reviewing jury instructions, the Court's responsibility is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)); *see Molina v.*

*Commonwealth*, 272 Va. 666, 671 (2006).  A jury instruction is proper "only if it is supported by more than a mere scintilla of evidence."  *Lawlor v. Commonwealth*, 285 Va. 187, 235 (2013).

### 1.  Threat

Drexel challenges the trial court's rejection of his proposed jury instruction defining a "true threat" under the First Amendment.  He believes that this instruction was necessary because it would have informed the jury that the Commonwealth was required to prove he intended to communicate a threat.

The trial court instructed the jury on the threat requirement.  The jury was instructed that to find Drexel guilty, it must find, in part, that he "made and communicated . . . a threat."  The court defined a threat to the jury as "a communication stating an intent to injure another person or property.  The communication, taken in its particular context, must reasonably cause the receiver to believe that the speaker will act according to his expressed intent."  This instruction accurately defined a threat.  *See Howard*, 74 Va. App. at 756; *see also Counterman*, 143 S. Ct. at 2114 ("True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" (alteration in original) (quoting *Black*, 538 U.S. at 359)).

In contrast, the rejected instruction reads:

> The First and Fourteenth Amendments to the United States
> Constitution protect the right to free speech unless the speech
> constitutes a true threat, which is defined as those statements
> where the speaker means to communicate a serious expression of
> an intent to commit an act of unlawful violence to a particular
> individual or group of individuals.

This proposed instruction used language from *Virginia v. Black*, 538 U.S. 343, 359 (2003).  "Virginia courts have often cautioned against lifting the 'language of a specific opinion' for a jury instruction given that an appellate opinion 'is meant to provide a rationale for a decision—and may not translate immutably into jury instructions.'"  *Seaton v. Commonwealth*, 42 Va. App. 739, 753 (2004) (quoting *Va. Power v. Dungee*, 258 Va. 235, 251 (1999)).  On its

face, Drexel's proposed instruction—defining a threat in part as an expression of intent to commit violence against *an individual or group of individuals*—is not relevant to the charge that he made a threat against *any place of assembly, building, or other structure*. *See* Code § 18.2-83.

Further, Drexel's proffered instruction attempts to incorporate the subjective intent of the speaker into the constitutional definition of a threat. Yet, as the Supreme Court of the United States has explained, "[t]he existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Counterman*, 143 S. Ct. at 2114 (quoting *Elonis*, 575 U.S. at 733). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat." *Id.* We hold, consistent with *Counterman*, that a communication must be both a "true threat" and that the speaker must have acted with some subjective intent for the communication to fall outside of the umbrella of the First Amendment. Proving that a particular statement is a threat is separate from proving the speaker made it with the requisite mens rea.

Drexel's requested instruction defining "true threat" was confusing and apt to mislead the jury. The instruction, as proffered, implied that one can violate the statute only by making threats against "a particular individual or group of individuals" and also that whether an expression is a threat turns on the subjective intent of the speaker or author. And it conflates two separate elements of the offense—the threat and the required mens rea. Therefore, the trial court did not abuse its discretion by rejecting the proffered instruction. *See generally Parnell*, 15 Va. App. at 345-47 (affirming the rejection of a proposed jury instruction defining "true threat" because it was potentially misleading).

## 2. Mens Rea

Drexel believes that the trial court erroneously instructed the jury on unlawful intent instead of malice as an element of the offense.[7] He bases his argument on his theory that a conviction under Code § 18.2-83 requires a showing of malice.

As discussed above in Part I.B, Code § 18.2-83 does not require that the offender acted with malice. Therefore, the trial court appropriately declined to tell the jury that malice was an element of the offense. *See generally Sarafin*, 288 Va. at 330-31 (affirming the rejection of a proffered instruction that misstated the applicable law).

## 3. "*Allen* Charge"

Drexel argues that the court should not have given the "*Allen* charge" to the jury because it was coercive. Below, his counsel objected to the instruction and instead asked that "they . . . be dismissed as a hung jury."

After about seven hours of deliberations, the jury sent a note that read: "What do we do if we cannot come to unanimous agreement? That is the stance of the jury at this time." Over Drexel's objection, the trial court instructed the jury as follows:

> As you've been told, your verdict must be unanimous. If
> you can possibly reach a verdict, it is your duty to do so. You
> should listen to the views and opinions of your fellow jurors with

___

[7] The trial court told the jurors that "unlawful intent" was an element of the crime and did not define the term for the jury. *See* Model Jury Instrs.—Crim. No. 7.600. Below, Drexel argued that the correct mens rea standard was malice and asked the court to instruct the jury accordingly. He did not ask the trial court to define unlawful intent for the jury, nor do his assignments of error encompass the argument that the court erred by failing to do so. *See* Rules 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."), 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."). Accordingly, to the extent Drexel now argues that the trial court erred by not defining the element of intent for the jury, we do not reach the issue. *See Sarafin*, 288 Va. at 323 n.1 (limiting review to the issues specifically encompassed in the appellant's assignments of error); *Nelson v. Commonwealth*, 50 Va. App. 413, 420 (2007) (considering a jury instruction issue waived because the appellant did not raise it with specificity at trial).

fairness and candor. And you should give consideration to what they say.

However, you must decide the case for yourself and you should reach an agreement only if it can be done without sacrificing your individual judgment. During the course of your deliberations, each of you, whether in the majority or the minority, should not hesitate to reexamine your own views and change your opinion, if you are convinced that it was wrong.

No juror however, should give up their honest opinion as to the evidence solely because the opinion of your fellow jurors, or for the mere purpose of returning a verdict. If you can reach a decision without surrendering your conscientious opinion, it is your duty to do so.

So, I'd ask you to return to the jury room and give the matter your further consideration. Thank you.

The jury resumed deliberations and reached a verdict.

The Supreme Court of Virginia has made clear, "when jurors have announced their inability to agree it is within the discretion of the trial court to urge on them an earnest effort to reach an agreement." *Poindexter v. Commonwealth*, 213 Va. 212, 215 (1972) (quoting *Petcosky v. Bowman*, 197 Va. 240, 252 (1955)). This type of instruction is known as an "*Allen* charge."[8] *See, e.g.*, *id.*; *Prieto v. Commonwealth*, 278 Va. 366, 387 (2009); *Joseph v. Commonwealth*, 249 Va. 78, 87 (1995). In giving this instruction, a trial court can "remind[] the jury of the need to reach a verdict if one can be reached without any individual juror giving up his or her conviction." *Prieto*, 278 Va. at 387 (quoting *Poindexter*, 213 Va. at 215). That is precisely what was done here.

The jury did not declare an inability to agree but asked what to "do if" they could not "come to a unanimous agreement," expressing that was its current "stance." In instructing the

---

[8] The term references *Allen v. United States*, 164 U.S. 492, 501-02 (1896), the seminal case approving the use of a jury instruction encouraging each juror to reconsider and listen to the conclusions of the other jurors in order to reach a unanimous verdict.

jury to deliberate further in the case, the trial court did not tell the jurors to go against their individual consciences. Instead, when urging thoughtful reconsideration, the court specifically stated that "[n]o juror . . . should give up their honest opinion as to the evidence solely because [of] the opinion of" the other "jurors, or for the mere purpose of returning a verdict." The court also advised the jurors that they should not "surrender[]" their "conscientious opinion[s]" to reach a decision. We hold the court did not abuse its discretion by giving this instruction.

## C. Sufficiency of the Evidence

Drexel challenges the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence on appeal, this Court will affirm the decision unless the judgment was plainly wrong or the conviction lacked evidence to support it. *See, e.g.*, *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 76 (2015). "If there is evidence to support the conviction[], the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Commonwealth v. Perkins*, 295 Va. 323, 327-28 (2018) (per curiam) (quoting *Courtney v. Commonwealth*, 281 Va. 363, 368 (2011)). In conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, 302 Va. at 97 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

It is also the function of the trier of fact to determine "the credibility of the witnesses and the weight afforded" the testimony of those witnesses. *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). Finally, evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence,

- 17 -

without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003)).

### 1. Threat

Drexel challenges the sufficiency of the evidence to prove that he made a threat under the statutory or constitutional definition.

"[A] threat is 'a communication avowing an intent to injure another's person or property'" that "reasonably cause[s] the receiver to believe that the speaker will act according to his expression of intent." *Howard*, 74 Va. App. at 756 (quoting *Perkins*, 12 Va. App. at 16); *see also Counterman*, 143 S. Ct. at 2114 (noting that whether a communication is a threat depends on "'what the statement conveys' to the person on the other end" (quoting *Elonis*, 575 U.S. at 733)). The standard is objective, turning on what a reasonable listener would believe. *See Howard*, 74 Va. App. at 756. The expression of intended violence must "convey a real possibility that violence will follow," as opposed to a jest or hyperbole. *Counterman*, 143 S. Ct. at 2114 (giving, as an example, the statement "I am going to kill you for showing up late").

During his conversation with Detective Marable and Officer Smith, Drexel was "extremely angry" and "passionately upset about the fact that he felt like he was . . . being wronged by the City of Alexandria." Drexel angrily stated he would burn down city hall. During this same conversation, he told the officers that "he was going to be the next Timothy McVeigh" because "he wanted to send a message."[9] He vowed he would kill "any law enforcement officers [who] approached him." And, Drexel expressed a desire "to dismember Judges and their families." Detective Marabel was "very concerned" because he believed that Drexel "meant" "the words he was saying."

---

[9] Timothy McVeigh was convicted for his role in bombing a federal building in Oklahoma City. *See, e.g.*, *United States v. McVeigh*, 153 F.3d 1166, 1176 (10th Cir. 1998).

Based on this evidence, the jury could conclude that Drexel's statement that he would burn down city hall reasonably conveyed a serious intent and would cause a listener "to believe that" he would act on that intent. *See Howard*, 74 Va. App. at 756. The evidence was therefore sufficient to support the jury's finding that Drexel's statement that he would burn down city hall was a threat.

## 2. Intent

Drexel also argues that the Commonwealth failed to prove he acted with the requisite intent.

"Proving intent by direct evidence often is impossible." *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 470 (2000)). Instead, "it may be proven by circumstantial evidence." *Carlson v. Commonwealth*, 69 Va. App. 749, 766 (2019). Intent can "be inferred from the facts and circumstances in a particular case." *Perkins*, 295 Va. at 330 (quoting *Burton v. Commonwealth*, 281 Va. 622, 627 (2011)).

Code § 18.2-83 requires the Commonwealth prove "that [the defendant] intended to make and communicate the threat." *Howard*, 74 Va. App. at 756 (alteration in original) (quoting *Summerlin*, 37 Va. App. at 297). In establishing the element of intent, the Commonwealth must show, at a minimum, that the offender "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *See Counterman*, 143 S. Ct. at 2112.

Here, in the course of a day, Drexel spoke with his therapist on the phone several times. As their conversations progressed, Drexel sounded more and more agitated. At first, he was angry and made some homicidal statements but did not express intent to act on them. Later, though, Drexel "had some very specific ideas and plans for how to harm others," including bombing city hall, and stated "that he was going to act on these thoughts." The therapist contacted the police.

- 19 -

When Detective Marable and Officer Smith followed up with him that day, Drexel told them he would burn down city hall. During that conversation, he expressed frustration and anger with the City of Alexandria. Drexel also said he would kill any law enforcement officers who approached him, and he expressed a desire "to dismember [j]udges and their families."

This evidence was sufficient for the jury to find that Drexel intended to make and communicate a threat to burn down city hall. *See Howard*, 74 Va. App. at 756. Further, the evidence supported a finding that, at a minimum, when speaking with the police, he "consciously disregarded a substantial risk that his" statement "would be viewed as threatening violence." *See Counterman*, 143 S. Ct. at 2112.

### D. Sentence

Drexel contends that the trial court erred by imposing a felony sentence because the jury was not asked to determine whether he was at least fifteen years old.

Code § 18.2-83 provides that a violation is "a Class 5 felony, provided, however, that if [the offender] is under 15 years of age, he is guilty of a Class 1 misdemeanor." Code § 18.2-83(A). Here, the jury was not specifically tasked with determining Drexel's age.

The Sixth and Fourteenth Amendments to the Constitution of the United States "entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U.S. at 477 (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). These protections "extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" *Id.* at 484 (alteration in original) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 251 (1998) (Scalia, J., dissenting)). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt." *Id.* at 490; *see Alston v. Commonwealth*, 274 Va. 759, 765 (2007).

Drexel argues that because the jury did not find that he was at least fifteen years old at the time of the offense, the court had the authority to impose only a misdemeanor sentence. He reasons that the trial court impermissibly made the factual finding concerning his age, thereby exposing him to a higher sentence.

"[T]he doctrine of judicial restraint dictates" that appellate courts "decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Here, "the best and narrowest ground for decision" is the conclusion that, assuming without deciding that it was error not to submit the factual issue of Drexel's age to the jury, "that error . . . was harmless as a matter of law." *See id.*

"[I]t is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless . . . .'" *Id.* at 420 (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983)); *see Rose v. Clark*, 478 U.S. 570, 580-84 (1986) (directing harmless error review after the jury received an erroneous burden-shifting instruction). A "failure to submit an element" or "a sentencing factor to the jury" is a non-structural error subject to harmless-error review. *Washington v. Recuenco*, 548 U.S. 212, 221-22 (2006).

A constitutional error, such as one involving a violation of due process, is harmless only if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see Clay v. Commonwealth*, 262 Va. 253, 259 (2001). A "constitutional error should be disregarded as harmless" only if the record makes "'clear beyond a reasonable doubt that a rational [factfinder] *would have* found the defendant guilty absent the error.'" *White*, 293 Va. at 422 (alteration in original) (quoting *Neder v. United*

*States*, 527 U.S. 1, 18 (1999)). *See generally Williams v. Commonwealth*, 32 Va. App. 395, 400 (2000) (en banc) (explaining that harmless error review differs from "a sufficiency of the evidence analysis" (quoting *Hooker v. Commonwealth*, 14 Va. App. 454, 458 (1992))).

Drexel's age was not in controversy. He does not claim that he was younger than fifteen at the time of his offense.[10] Evidence of his age was entered into the record during the guilt phase of trial, including a photograph of his driver's license which provided that he was born in July 1985. The offense occurred in March 2021, when he was thirty-five years old. The trial occurred in 2022, around seventeen months after the offense. The jury saw Drexel and was able to judge his age from his appearance. *See Lambert v. Commonwealth*, 9 Va. App. 67, 73 (1989). Gill testified that she was a therapist for *adults* and had provided Drexel with therapy since January 2021. It is clear based on this record that, had the jury been tasked with determining whether Drexel was fifteen years of age or older, it would have found that he was. Accordingly, assuming an error was committed by not submitting the question of Drexel's age to the jury, it was harmless beyond a reasonable doubt.[11]

We recognize that Drexel argues his conviction order was void ab initio because his sentence exceeded the permissible statutory range for the misdemeanor crime. An order is void ab initio if the court lacked subject matter jurisdiction. *See Cilwa v. Commonwealth*, 298 Va. 259, 266-67 (2019) (contrasting judgments that are "void ab initio" with those that are merely "voidable"). *Apprendi* errors are "non-jurisdictional." *Lawlor v. Davis*, 288 Va. 223, 228

---

[10] During his arraignment, Drexel stated that he was born in July 1985. *See generally Almendarez-Torres*, 523 U.S. at 248 (noting that the petitioner's factual admission in his guilty plea made it "difficult to show that the standard of proof could have made a difference to his case").

[11] In light of this conclusion, this opinion does not address the Commonwealth's argument that Drexel waived his *Apprendi* challenge by failing to object to the indictment until after the jury verdict.

(2014). Consequently, any error here under *Apprendi* did not render the sentencing order void ab initio.[12]

CONCLUSION

The trial court acted within its discretion by admitting Drexel's challenged statements into evidence. The court also acted within its discretion by rejecting his proposed jury instructions on threat and malice, as well as by giving the jury an "*Allen* charge." And, the Commonwealth presented sufficient evidence to prove that he made a threat and that he had the requisite intent. Last, assuming without deciding that the trial court erred by not submitting the question of Drexel's age to the jury, that error was harmless because the evidence clearly established that he was not younger than fifteen at the time of the offense. For these reasons, we affirm the conviction.

*Affirmed.*

---

[12] Drexel relies on *Artis v. Commonwealth*, 76 Va. App. 393, 406 (2023), in which this Court held that a sentencing order was void because, in pertinent part, "the predicate conviction upon which the trial court sought to impose the enhanced punishment was" not "proven." Unlike *Artis*, the fact of Drexel's age was incontrovertibly established during the guilt phase of trial, even though the question of age was not submitted to the jury. Therefore, *Artis* does not apply to this case.